# United States Court of Appeals
## For the First Circuit

No. 17-2128

MARGARET LAWLESS,

Plaintiff, Appellee,

v.

STEWARD HEALTH CARE SYSTEM, LLC,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Torruella, Selya and Kayatta,
Circuit Judges.

Robert G. Young, with whom Timothy P. Van Dyck and Bowditch
& Dewey, LLP were on brief, for appellant.
Daniel W. Rice, with whom Glynn, Landry & Rice, LLP was on
brief, for appellee.

June 25, 2018

**SELYA**, **Circuit Judge**.  At its inception, this appeal seemed to present a single question — albeit a novel one — about how to interpret the Massachusetts Wage Act (the Wage Act).  See Mass. Gen. Laws ch. 149, §§ 148, 150.  But appearances can be deceiving, cf. Aesop, The Wolf in Sheep's Clothing (circa 550 B.C.), and at oral argument, a threshold question emerged as to the existence vel non of federal subject-matter jurisdiction.  After careful consideration, we hold that federal subject-matter jurisdiction existed at the time of removal because there was then a colorable claim of complete preemption under the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a).  Even after it became evident that LMRA preemption was not in the cards, the district court retained authority to exercise supplemental jurisdiction over the case.  See 28 U.S.C. § 1367(c).  With our jurisdictional concerns assuaged, we reach the merits, grapple with the disputed Wage Act question, and affirm the judgment below.

## I. BACKGROUND

The facts are, for all practical purposes, undisputed. Defendant-appellant Steward Health Care System, LLC owns and operates several medical facilities in Massachusetts, including Carney Hospital (Carney).  Plaintiff-appellee Margaret Lawless worked as a nurse at Carney for many years.  At the times relevant hereto, she was a member of the Massachusetts Nurses Association, a union that had a collective bargaining agreement (CBA) with the

- 2 -

defendant.  The CBA contained various provisions addressing members' compensation.

On March 5, 2016, the defendant terminated the plaintiff's employment.  On March 7, the plaintiff sued the defendant in a Massachusetts state court, alleging failure to pay accrued wages by the date of her termination.  Specifically, the plaintiff alleged that the defendant had failed to pay $20,154.30 in paid time off (PTO) and $21,191.11 in extended sick leave (ESL).  These payment shortfalls, she alleged, were in breach of her employment contract and in violation of the Wage Act, Mass. Gen. Laws ch. 149, §§ 148, 150.  That same day, the plaintiff filed an administrative complaint with the Attorney General of Massachusetts, requesting leave to proceed with her suit.  See id. § 150.

On March 10, the defendant made a direct deposit into the plaintiff's bank account in the amount of $12,754.33 — a sum that was intended to compensate her for all of the PTO owed.  Six days later, the plaintiff received a check from the defendant in the amount of $2,440.80 — a sum that was intended to compensate her for all of the accrued ESL.  On March 22, the Attorney General assented to the plaintiff's maintenance of her suit.

On May 23, the plaintiff amended her complaint and withdrew her claim for breach of contract.  The amended complaint also revised the amounts that the plaintiff claimed were overdue:

- 3 -

it alleged that, at the time of her discharge, she was owed $20,354.44 in PTO and $2,440.80 in ESL. The defendant removed the case to the federal district court the next day, pegging federal subject-matter jurisdiction on the basis of LMRA preemption. See 28 U.S.C. §§ 1331, 1441(a), 1446; see also 29 U.S.C. § 185(a). The plaintiff did not move to remand. The case proceeded in the district court and, in due course, the parties cross-moved for summary judgment. See Fed. R. Civ. P. 56(a). The district court granted summary judgment in favor of the plaintiff, awarding her treble damages in an amount equal to three times the cumulative total of her accrued PTO and ESL as of the date of her discharge, together with reasonable attorneys' fees and costs. See Mass. Gen. Laws ch. 149, § 150. This timely appeal ensued.

Following the filing of briefs, the case came on for oral argument in this court on May 10, 2018. Although neither party had broached the existence of federal subject-matter jurisdiction, we raised doubts about jurisdiction at oral argument and ordered supplemental briefing. Those briefs having been submitted, the appeal is now ripe for resolution.

## II. JURISDICTION

A court without jurisdiction is like a king without a kingdom: both are powerless to act. Since the existence of federal subject-matter jurisdiction implicates our power to hear and determine a case, we must address that issue before proceeding

further.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998); Bonano v. E. Carib. Airline Corp., 365 F.3d 81, 83 (1st Cir. 2004).  The fact that neither party has challenged the existence of federal subject-matter jurisdiction is of no moment:  federal subject-matter jurisdiction can never be presumed, nor can it be conferred by acquiescence or consent.  See Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006); Cusumano v. Microsoft Corp., 162 F.3d 708, 712 (1st Cir. 1998).  When circumstances exist that call federal subject-matter jurisdiction into legitimate question, "an appellate court has an unflagging obligation to inquire sua sponte into its own jurisdiction." Watchtower Bible & Tract Soc. of N.Y. v. Colombani, 712 F.3d 6, 10 (1st Cir. 2013) (quoting Charlesbank Equity Fund II v. Blinds to Go, Inc., 370 F.3d 151, 155-56 (1st Cir. 2004)).

This case, though originally filed in a Massachusetts state court, was removed to the federal district court.  It is settled beyond peradventure that a state-court action is removable only if it "originally could have been filed in federal court." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).  We review a district court's retention of subject-matter jurisdiction over a removed case de novo.  See BIW Deceived v. Local S6, Indus. Union of Marine & Shipbldg. Workers of Am., 132 F.3d 824, 830 (1st Cir. 1997).

The parties see no jurisdictional problem. They jointly posit that this case was appropriately removed on the basis of federal-question jurisdiction, that is, they envision that this case arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. But "[t]he gates of federal question jurisdiction are customarily patrolled by a steely-eyed sentry — the 'well-pleaded complaint rule.'" BIW, 132 F.3d at 831. Consequently, the propriety of federal-question jurisdiction must be assayed based on "what necessarily appears in the plaintiff's statement of [her] own claim" in her complaint, "unaided by anything alleged in anticipation of avoidance of defenses which it is thought that a defendant may interpose." Franchise Tax Bd. v. Constr. Laborers Vacation Tr., 463 U.S. 1, 10 (1983) (quoting Taylor v. Anderson, 234 U.S. 74, 75-76 (1914)). In the context of removal, "we consider the claims in the state court [complaint] as they existed at the time of removal." Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002); see Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co., 491 F.3d 320, 330 (6th Cir. 2007).

At first blush, the parties' shared claim of jurisdiction appears to run headlong into the well-pleaded complaint rule. The operative pleading (the amended complaint) contains a single cause of action claiming violations of the Wage Act and does not refer at all to federal law. But there may be

- 6 -

more here than meets the eye:  the parties argue that the amended complaint raises a colorable claim under the complete preemption doctrine (sometimes referred to as the artful pleading doctrine). See López-Muñoz v. Triple-S Salud, Inc., 754 F.3d 1, 5 (1st Cir. 2014) (explaining complete preemption doctrine).  On reflection, we agree.

We start with the doctrine of complete preemption: "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character."  Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987).  Section 301 of the LMRA operates in this fashion.  See 29 U.S.C. § 185(a); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209-13 (1985).  It is by now black-letter law that "the preemptive force of [section] 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization."  BIW, 132 F.3d at 831 (quoting Franchise Tax Bd., 463 U.S. at 23).  Any claim falling under the carapace of section 301 is therefore treated as "purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of [section] 301."  Id. (quoting Franchise Tax Bd., 463 U.S. at 23). Although state courts may exercise concurrent jurisdiction over claims completely preempted under section 301, they must look to

federal common law for the substantive rules of decision. See United Steelworkers of Am. v. Rawson, 495 U.S. 362, 368 (1990).

Withall, the doctrine of complete preemption is "misleadingly named." Rueli v. Baystate Health, Inc., 835 F.3d 53, 57 (1st Cir. 2016) (quoting Hughes v. United Air Lines, Inc., 634 F.3d 391, 393 (7th Cir. 2011)). Although preemption is typically a defense to liability under state law, complete preemption serves a different function: with respect to the application of the well-pleaded complaint doctrine, it transmogrifies a claim purportedly arising under state law into a claim arising under federal law. See id.; López-Muñoz, 754 F.3d at 5.

LMRA complete preemption has broad application in employment-related matters. See Lueck, 471 U.S. at 210-11; Cavallaro v. UMass Mem'l Healthcare, Inc., 678 F.3d 1, 5 (1st Cir. 2012). In addition to claims that are predicated on rights created under CBAs, the complete preemption doctrine extends to claims that are "substantially dependent on analysis of a collective-bargaining agreement." Caterpillar, 482 U.S. at 394 (quoting Int'l Bhd. of Elec. Workers v. Hechler, 481 U.S. 851, 859 n.3 (1987)); see Lueck, 471 U.S. at 220 (ruling that state-law tort claim requiring interpretation of CBA was preempted).

Even so, LMRA complete preemption has its limits. "[N]ot every dispute concerning employment, or tangentially involving a

- 8 -

provision of a collective-bargaining agreement, is preempted by [section] 301." Lueck, 471 U.S. at 211. It follows that section 301 does not "preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." Id. at 212. In the last analysis, state-law claims that require "only consultation with the CBA," as opposed to "actual interpretation" of the CBA, "should not be extinguished." Adames v. Exec. Airlines, Inc., 258 F.3d 7, 12 (1st Cir. 2001); see Cavallaro, 678 F.3d at 7.

The line between consultation and interpretation has proven difficult to plot. See Livadas v. Bradshaw, 512 U.S. 107, 124 n.18 (1994) (noting judicial confusion about scope of LMRA complete preemption); Cavallaro, 678 F.3d at 5 (remarking that Supreme Court "has never fully integrated" LMRA complete preemption cases into a unitary doctrine). But precise line-drawing is not essential here: at the time of removal, this case fell within the "interpretation" sector. We explain briefly.

A court surveying its subject-matter jurisdiction "reviews a plaintiff's complaint not to judge the merits, but to determine whether [it] has the authority to proceed." BIW, 132 F.3d at 832. The federal claim need not have merit in order for the court to assume jurisdiction. See Steel Co., 523 U.S. at 89. To the contrary, a court has jurisdiction to decide a case so long as the plaintiff has alleged a colorable federal claim. See Bell

v. Hood, 327 U.S. 678, 682-83 (1946); Ne. Erectors Ass'n of BTEA v. Sec'y of Labor, 62 F.3d 37, 39 n.1 (1st Cir. 1995). A claim is "colorable" if it is "seemingly valid or genuine," BIW, 132 F.3d at 832 n.4 (citation omitted), as opposed to "wholly insubstantial, immaterial, or frivolous," Boettcher v. Sec'y of HHS, 759 F.2d 719, 722 (9th Cir. 1985).

Applying these general principles to the section 301 setting, we do not focus on whether any of the plaintiff's claims were in fact completely preempted. Instead, we focus on whether the amended complaint, "taken in context, reveals a colorable federal question within a field in which state law is completely preempted." BIW, 132 F.3d at 832. Federal subject-matter jurisdiction exists as long as — at the time of removal — there was a seemingly valid or genuine argument that adjudication of the plaintiff's claim would require construction of the CBA. See id. at 833.

We find this permissive standard satisfied here. The plaintiff alleged in her original complaint that the defendant failed to pay her PTO and ESL. There can be no doubt that the CBA was potentially implicated in any dispute over the amounts of PTO and ESL owed by the defendant to the plaintiff. After all, the CBA contained provisions addressing the plaintiff's right to both PTO and ESL.

To be sure, the plaintiff amended her complaint prior to removal, dropping her breach of contract claim. The amended complaint, however, was less than pellucid as to whether the plaintiff was still seeking to recover any additional lost wages or was restricting her claim to penalties for failure to make timely payments under the Wage Act.[1] The fact that the plaintiff's amended complaint contained only a Wage Act count tells us very little in light of the fact that the Wage Act confers the right to sue for not just penalties, but for wages too. See Mass. Gen. Laws ch. 149, § 150.

Because the CBA addressed the plaintiff's rights to PTO and ESL, it was plausible at the time of removal that the district court would be required to interpret the CBA in order to determine what amounts, if any, were owed as lost wages. Cf. Cavallaro, 678 F.3d at 8 (finding Wage Act claim preempted when "determining what (if anything) is owed" was an "inevitable issue" and would "depend[] at least arguably on interpretations and applications of the CBA"); Flibotte v. Pa. Truck Lines, Inc., 131 F.3d 21, 26 (1st Cir. 1997) (similar). Since there was a genuine question about whether the plaintiff's entitlement to relief under her Wage Act

---

[1] For example, the amended complaint alleged that the plaintiff had earned $20,354.44 in PTO prior to her discharge. At the same time, it acknowledged the defendant's March 10 payment of $12,754.33. These averments left some uncertainty as to whether the plaintiff was seeking to recover the difference.

- 11 -

claim would require construction of the CBA, her amended complaint was removable.[2]

There is a wrinkle. The plaintiff testified, during her pretrial deposition, that she had been paid her PTO and ESL in full, prior to the date on which her action was removed to the federal court. The effect of this testimony was to concede that her only remaining claim was for penalties under the Wage Act. For aught that appears, the claim for penalties — unlike the claim for lost wages — was based on an independent obligation under the Wage Act and did not brook any interpretation of the CBA. See Livadas, 512 U.S. at 124-25. Thus, any prospect for preemption vanished by the time that the plaintiff's deposition ended (well before the district court entered summary judgment).

This circumstance, though, did not deprive the district court of jurisdiction. See 28 U.S.C. § 1367. After all, it is common ground that when a federal court may validly exercise federal-question jurisdiction over at least one claim, it may also exercise supplemental jurisdiction over pendent state-law claims. See Cavallaro, 678 F.3d at 5, 9; BIW, 132 F.3d at 833. And once

---

[2] The fact that the amended complaint did not explicitly refer to the CBA is not fatal to this analysis. See BIW, 132 F.3d at 831. A federal question may exist under the complete preemption doctrine, even if that question is absent from the four corners of the operative complaint. See Cavallaro, 678 F.3d at 5. In this case, the defendant sufficiently articulated in its notice of removal why the CBA, the existence of which the plaintiff did not dispute, was plausibly implicated.

such supplemental jurisdiction has attached, the mere fact that the anchoring federal claim subsequently goes up in smoke does not, without more, doom all pendent state-law claims. See Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995); see also 28 U.S.C. § 1367(a), (c).

This is such a case. Because the plaintiff's claim for penalties under the Wage Act arose from the same nucleus of operative facts as her potentially preempted claim for lost wages, the district court had supplemental jurisdiction over the former claim. See BIW, 132 F.3d at 833. The mere fact that any prospect of complete preemption had dissipated by the time that the cross-motions for summary judgment were filed did not deprive the district court of its supplemental jurisdiction over the Wage Act claim. See Rodriguez, 57 F.3d at 1177.

Of course, the fact that the district court had discretion to hear and determine the plaintiff's Wage Act claim does not mean that its implicit exercise of that discretion was appropriate. When any and all federal claims have been dismissed prior to trial, "the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity" often will counsel in favor of declining jurisdiction over any remaining state-law claim. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). Where, as here, the only federal claim has vanished before trial and the remaining

- 13 -

state-law claim raises a knotty and unresolved question of state law, dismissal without prejudice typically will be a prudent option. See Houlton Citizens' Coal. v. Town of Houlton, 175 F.3d 178, 192 (1st Cir. 1999).

Here, however, the circumstances are not typical. After the plaintiff clarified the extent of her case through her deposition testimony, neither party objected to the district court's retention of jurisdiction over what was obviously a claim arising under state law. Unlike an objection to federal subject-matter jurisdiction, which is unwaivable, an objection to the district court's exercise of supplemental jurisdiction over a pendent state-law claim may be waived. See Acri v. Varian Assocs., 114 F.3d 999, 1000-01 (9th Cir. 1997) (en banc); Doe by Fein v. District of Columbia, 93 F.3d 861, 871 (D.C. Cir. 1996) (per curiam). Here, the parties never challenged the district court's continuing exercise of supplemental jurisdiction,[3] so they have waived any such challenge. See Powers v. United States, 783 F.3d 570, 576-77 (5th Cir. 2015).

---

[3] The fact that the district court exercised its discretion to allow the case to proceed under supplemental jurisdiction implicitly rather than explicitly does not invalidate its determination. A district court is not obliged to make findings about the propriety of supplemental jurisdiction under section 1367(c) sua sponte. See Acri, 114 F.3d at 1000-01. We caution, though, that the decision about whether to retain supplemental jurisdiction is a weighty one, and the due administration of justice often will be better served by an express determination (including a brief explication of the court's rationale).

- 14 -

To sum up, the district court properly exercised jurisdiction over the plaintiff's complaint at the time of removal. At that point, jurisdiction was premised on a colorable federal question. When, thereafter, that colorable federal question evaporated during pretrial discovery, the district court opted, albeit implicitly, to retain supplemental jurisdiction over the remaining Wage Act claim. In the absence of any objection, that discretionary exercise of supplemental jurisdiction was sufficient to keep the Wage Act claim within the jurisdictional reach of the federal court. Hence, we have jurisdiction to review the district court's adjudication of the Wage Act claim.

## III. THE MERITS

We begin our appraisal of the merits by rehearsing the familiar summary judgment standard. Summary judgment is warranted if the record, construed in the light most flattering to the nonmovant, "presents no genuine issue as to any material fact and reflects the movant's entitlement to judgment as a matter of law." McKenney v. Mangino, 873 F.3d 75, 80 (1st Cir. 2017), cert. denied, 138 S. Ct. 1311 (2018); see Fed. R. Civ. P. 56(a). Where, as here, the parties cross-move for summary judgment, the court must assay each motion "separately, drawing inferences against each movant in turn." EEOC v. Steamship Clerks Union, 48 F.3d 594, 603 n.8 (1st Cir. 1995). We review a grant of summary judgment de novo. See McKenney, 873 F.3d at 80. In carrying out such a review, we are

- 15 -

not wed to the district court's rationale but, rather, "may affirm on any independent ground made evident by the record." González-Droz v. González-Colón, 660 F.3d 1, 9 (1st Cir. 2011).

Since the district court adjudicated the state-law claim under supplemental jurisdiction, federal law supplies the applicable procedural rules and state law supplies the substantive rules of decision. See Perry v. Blum, 629 F.3d 1, 8 (1st Cir. 2010). In this instance, Massachusetts is the source of that state law. Absent controlling Massachusetts authority on a particular point, "we must make an 'informed prophecy' as to how the state's highest court — the Supreme Judicial Court (SJC) — would rule if faced with the issue." Sanders v. Phoenix Ins. Co., 843 F.3d 37, 42 (1st Cir. 2016) (quoting Ambrose v. New Eng. Ass'n of Schs. & Colls., 252 F.3d 488, 498 (1st Cir. 2001)). To arrive at this informed prophecy, we may look to "analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the [SJC] would decide the issue at hand." N. Am. Specialty Ins. Co. v. Lapalme, 258 F.3d 35, 38 (1st Cir. 2001) (quoting Gibson v. City of Cranston, 37 F.3d 731, 736 (1st Cir. 1994)).

The focal point of this appeal is the plaintiff's claim under the Wage Act, Mass. Gen. Laws ch. 149, §§ 148, 150. First enacted in 1879, the Wage Act was intended "to protect employees and their right to wages." Elec. Data Sys. Corp. v. Attorney

General, 907 N.E.2d 635, 641 (Mass. 2009). Of particular pertinence for present purposes, the Wage Act requires an employer to pay an employee "in full" by the date of discharge. Mass. Gen. Laws ch. 149, § 148. This provision "impose[s] strict liability on employers," who must "suffer the consequences" of non-compliance regardless of their intent. Dixon v. City of Malden, 984 N.E.2d 261, 265 (Mass. 2013) (quoting Somers v. Converged Access, Inc., 911 N.E.2d 739, 749 (Mass. 2009)).

The Wage Act establishes a two-track system of enforcement. One track is rooted in the criminal law: section 150 "authorizes, but does not require" the Attorney General of Massachusetts to charge violators criminally. Depianti v. Jan-Pro Franchising Int'l, Inc., 990 N.E.2d 1054, 1060 (Mass. 2013). The other track is civil. In 1993, the Massachusetts legislature dramatically extended the statute's reach by creating a private right of action allowing aggrieved employees to sue for lost wages, treble damages, attorneys' fees, and costs. See 1993 Mass. Acts 681-82; see also Melia v. Zenhire, Inc., 967 N.E.2d 580, 588 n.8 (Mass. 2012). Although the 1993 amendment required a plaintiff to prove that an employer's conduct was outrageous in order to recover treble damages, a 2008 amendment, applicable to this case, dispensed with that prerequisite and mandated the trebling of any award of lost wages under the Wage Act. See 2008 Mass. Acts 71;

- 17 -

see also George v. Nat'l Water Main Cleaning Co., 77 N.E.3d 858, 862 (Mass. 2017).

In an effort to ensure that the Wage Act's dual enforcement mechanisms work harmoniously, the statute requires that an aggrieved employee file a "complaint" with the Attorney General, notifying her of a claimed violation. See Depianti, 990 N.E.2d at 1061. The employee may bring a private suit either "ninety days after filing a complaint with the Attorney General, or sooner if the Attorney General assents to such suit." Id. at 1060.

In the case at hand, the plaintiff plainly failed to comply with the first alternative method for satisfying this notice requirement: she did not wait ninety days between filing her complaint with the Attorney General and commencing her action in state court. Instead, she filed both her administrative complaint and her state-court complaint on the same day. The plaintiff argues, however, that she did comply with the second alternative for satisfying the notice requirement: she obtained the Attorney General's assent to her suit, albeit several days after her suit was commenced. In her view, the fact that her action was already pending when the Attorney General assented was of no moment.

The defendant demurs. It insists that the plaintiff's action is foreclosed because she was paid in full before receiving the Attorney General's letter of assent. In other words, the

- 18 -

defendant invites us to construe the alternative notice requirement as creating a grace period: it posits that an employer is exempt from liability in a suit brought under the Wage Act until one of two things happens — either the Attorney General assents or the 90-day period expires.

In resolving this interpretive dispute, our journey starts with the statutory text. When statutory terms are "'plain and unambiguous' in their meaning, we view them as 'conclusive as to legislative intent.'" Dorrian v. LVNV Funding, LLC, 94 N.E.3d 370, 375 (Mass. 2018) (quoting Water Dep't of Fairhaven v. Dep't of Envtl. Prot., 920 N.E.2d 33, 37 (Mass. 2010)). If, however, the meaning of a statute is not readily apparent from its language, "[w]e look to the intent of the Legislature 'ascertained from all its words . . . considered in connection with the cause of [the statute's] enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.'" Id. (quoting DiFiore v. Am. Airlines, Inc., 910 N.E.2d 889, 893 (Mass. 2009)).

Here, the plain language of the Wage Act provides a convincing rebuttal to the defendant's argument. Section 148 directs that an employee "shall be paid in full on the day of [her] discharge." We think that language says what it means and means what it says — and that conclusion is reinforced by the legislature's use of the word "shall." It is apodictic that, in

- 19 -

the drafting of statutes, such usage customarily connotes a "mandatory or imperative obligation." Commonwealth v. Guzman, 14 N.E.3d 946, 951 (Mass. 2014) (quoting Hashimi v. Kalil, 446 N.E.2d 1387, 1389 (Mass. 1983)). So viewed, the Wage Act establishes a mandatory obligation to pay an employee any accrued "wages" by the day of her discharge. An employee who does not receive her due wages by that date — even an employee who is paid in full a day later — suffers a cognizable injury within the purview of the statute. See Mass. Gen. Laws ch. 149, §§ 148, 150.

The defendant resists this interpretation but does not point to any provision in the Wage Act that immunizes a dilatory employer based on the timing of the Attorney General's assent. Massachusetts courts generally "will not add language to a statute where the Legislature itself has not done so," Mui v. Mass. Port Auth., 89 N.E.3d 460, 462 (Mass. 2018), and we see no reason to depart from this salutary praxis here. What language there is in the Wage Act points in the opposite direction. For instance, section 150 provides that a "defendant shall not set up as a defence [sic] a payment of wages after the bringing of the complaint." Mass. Gen. Laws ch. 149, § 150. Fairly read, this provision indicates that an employer may not avoid liability under the Wage Act when — as in this case — it belatedly pays an employee after the filing of the "complaint." While there is admittedly an ambiguity as to whether the term "complaint" refers to what is

- 20 -

filed with the Attorney General or what is filed in court — section 150 appears to use the term interchangeably to mean both things — we need not resolve that ambiguity here.  In point of fact, the defendant's tardy payment occurred after the plaintiff had filed complaints both with the Attorney General and in court.

Striving to derail this reasoning, the defendant argues that a plain-language construction of the statutory text would divest the notice requirement of any real meaning.  We agree with the premise on which this argument rests:  courts should try to avoid interpretations that render statutory language mere surplusage.  See Narragansett Indian Tribe v. Rhode Island, 449 F.3d 16, 26 (1st Cir. 2006) (en banc); Ropes & Gray LLP v. Jalbert, 910 N.E.2d 330, 336 (Mass. 2009).  But the conclusion that the defendant would have us draw does not follow from this uncontroversial premise.  A plain-language construction of the applicable Wage Act provision does not offend the "surplusage" canon.  When a plaintiff files a civil action before receiving the Attorney General's assent and before the closing of the 90-day window, she runs the risk that the Attorney General's assent will not be forthcoming.  In that event, the plaintiff's suit would become a dead letter.

Shifting gears, the defendant notes that, in 2014, the legislature amended the Wage Act to provide for tolling its three-year statute of limitations upon the filing of a complaint with

the Attorney General. See Mass. Gen. Laws ch. 149, § 150. The defendant suggests that this amendment shines a new (and unfavorable) light on the proposed plain-language construction of the statute, since there would be no need for tolling if a party could file a civil action before receiving the Attorney General's assent. This suggestion is unpersuasive: simply because the legislature contemplated that certain aggrieved employees might wait for either the Attorney General's assent or the passage of 90 days before filing suit does not mean that the legislature intended to require all aggrieved employees to do so.

The defendant also suggests that we should be guided by the SJC's construction of similar language in the Massachusetts anti-discrimination statute. See, e.g., Commonwealth v. Hamilton, 945 N.E.2d 877, 882 & n.8 (Mass. 2011) (affording equivalent constructions to similarly phrased provisions appearing in different sections of code); see also Mass. Gen. Laws ch. 151B, § 9 (authorizing anti-discrimination suits "at the expiration of ninety days after the filing of a complaint with the [Massachusetts Commission Against Discrimination (MCAD)], or sooner if a commissioner assents in writing"). Under the anti-discrimination statute, as construed, a plaintiff must file an administrative grievance with the MCAD before bringing a civil action. See Depianti, 990 N.E.2d at 1061. But statutory language must be construed in light of the statutory purpose, see Bos. Police

Patrolmen's Ass'n v. City of Bos., 761 N.E.2d 479, 480 (Mass. 2002), and the SJC has explained that the two notice provisions, though worded similarly, serve distinctly different purposes, see Depianti, 990 N.E.2d at 1061.

The filing of a complaint with the MCAD triggers a "prompt investigation" by the Commission, id. (quoting Mass. Gen. Laws ch. 151B, § 5), which determines whether there is "probable cause to credit the allegations" and, in appropriate cases, allows the Commission to engage in conciliation, conduct administrative proceedings, and order relief, id. This elaborate grievance process affords the MCAD the opportunity to "resolve such claims with greater flexibility and efficiency than may be had in a judicial forum," thus saving all parties from the burdens of full-dress litigation. Id.

The Wage Act contains nothing that even remotely resembles this elaborate process. It "does not provide a comprehensive remedial scheme to resolve claims outside a judicial forum." Id. at 1061-62. Its filing requirement is "intended simply to ensure that the Attorney General receives notice of the alleged violations, so that she may investigate and prosecute such violations at her discretion." Id. at 1061. To safeguard the Attorney General's prerogative, the Wage Act stipulates that a plaintiff cannot obtain a favorable judgment without first having notified the Attorney General and received her permission to

proceed. See Mass. Gen. Laws ch. 149, § 150. Given the Attorney General's limited role, a defendant in a Wage Act case (unlike a defendant in a discrimination case) cannot conceivably claim prejudice from the initiation of a lawsuit before the filing of an administrative complaint.

The short of it is that the defendant is attempting to compare plums to pomegranates. With respect to the operation of the statutory notice requirements and the timing of suits, the anti-discrimination statute and the Wage Act — despite their linguistic similarities — are not fair congeners.

Searching for more hospitable terrain, the defendant attacks the plain-language construction of the Wage Act on policy grounds. This attack features a parade of horribles. For example, the defendant complains that a refusal to recognize a grace period furnishes an unwholesome incentive for "employees to run to the courts immediately to assert claims under the Wage Act upon the slightest delay in payment." Similarly, the defendant laments that "[a] mere payroll glitch, coupled with a fast-acting plaintiff's lawyer waiting at the courthouse steps, would be enough to impose treble damages (and attorneys' fees) on an unwitting employer."

Hyperbole is not a reliable tool for statutory construction, and it is not for us to say whether (or to what extent) the defendant's fears are overblown. As a federal court,

our task is "to apply state law, not rewrite it." Bonney v. Can. Nat'l Ry., 800 F.2d 274, 280 (1st Cir. 1986). In the due performance of this task, we conclude that the statutory text and the reasoning in prior decisions of the SJC compel us to interpret the disputed provisions of the Wage Act according to their plain, unvarnished language. Read in that light, liability attaches upon late payment. This conclusion fits seamlessly with the purpose of the Wage Act, which aims to ensure the timely payment of wages. See Bos. Police Patrolmen's Ass'n, 761 N.E.2d at 481. To effectuate this purpose, the legislature chose to hold employers strictly liable for dilatory payment. See Dixon, 984 N.E.2d at 265. When — as in this instance — the legislature has enacted a statute with a clear remedial purpose, a court should be reluctant to imply a limitation on recovery that is not compelled by the plain statutory language. See Depianti, 990 N.E.2d at 1067. We see no justification for such an implication here.

There is one loose end. In its reply brief, the defendant calls attention to the SJC's recent holding that ESL payments are not "wages" within the meaning of the Wage Act. See Mui, 89 N.E.3d at 461. Building on this foundation, the defendant urges that we reverse that portion of the district court's judgment awarding treble damages based on belated ESL payments.

We reject this exhortation. In the district court, the defendant never argued that ESL payments were outside the ambit of

- 25 -

the Wage Act.  Nor did it make this argument in its opening brief in this court.  Consequently, the argument is doubly defaulted: once by the defendant's failure to raise it below, see Teamsters, Chauffeurs, Warehousemen & Helpers Union v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992) ("If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal."), and once by the defendant's failure to raise it in its opening brief, see Sandstrom v. ChemLawn Corp., 904 F.2d 83, 86 (1st Cir. 1990) (holding argument not advanced in appellant's opening brief but raised only in reply brief, to be waived).

Although there may be extraordinary circumstances that would warrant the relaxation of such procedural defaults, we discern none here.  After all, a party generally may not "raise an entirely new argument that could have been articulated below or in the party's opening brief."  Learmonth v. Sears, Roebuck & Co., 710 F.3d 249, 256 (5th Cir. 2013).  Here, the applicability of the Wage Act to ESL was an unresolved issue at the time of the plaintiff's firing, and several Massachusetts courts had anticipated the SJC's decision.  See, e.g., Berry v. Greenery Rehab. & Skilled Nursing Ctr., No. CA923189, 1993 WL 818564, at *3 n.4 (Mass. Super. Oct. 29, 1993).  Because the defendant could

have raised this defense all along but did not do so, there is not the slightest basis for relieving it of its procedural default.

We summarize succinctly. To prevail in a civil action, an employee aggrieved by a violation of the Wage Act must either wait 90 days after providing notice to the Attorney General or receive the Attorney General's assent. An employee who initiates such an action within the 90-day period and before the Attorney General has assented may still recover under the Wage Act as long as the Attorney General assents to the suit prior to the entry of judgment. Because the plaintiff received the Attorney General's assent while her suit was pending and well before the entry of judgment, we hold — as did the district court — that she was entitled to summary judgment.

## IV. CONCLUSION

We need go no further. For the reasons elucidated above, the judgment is

**Affirmed.**