# United States Court of Appeals
## For the First Circuit

No. 18-1347

INDUSTRIA LECHERA DE PUERTO RICO, INC.,

Plaintiff-Appellant,

v.

RAMÓN GONZÁLEZ BEIRÓ in his official capacity as ACTING
SECRETARY OF THE PUERTO RICO DEPARTMENT OF AGRICULTURE;* JORGE
CAMPOS MERCED, in his official capacity as ADMINISTRATOR OF THE
PUERTO RICO MILK INDUSTRY REGULATORY OFFICE,**

Defendants-Appellees, and

SUIZA DAIRY, CORP.; VAQUERÍA TRES MONJITAS, INC.,

Intervenor-Defendants, Intervenor-Appellees.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Daniel R. Domínguez, U.S. District Judge]

_____

Before

Howard, Chief Judge
Torruella*** and Thompson, Circuit Judges.

_____

* Pursuant to Fed R. App. P. 43(c)(2), Acting Secretary of the
Puerto Rico Department of Agriculture Ramón González Beiró has
been substituted for former Secretary of the Puerto Rico Department
of Agriculture Carlos Flores Ortega.

** Pursuant to Fed R. App. P. 43(c)(2), Administrator of the Puerto
Rico Milk Industry Regulatory Office Jorge Campos Merced has been
substituted for former Interim Administrator of the Puerto Rico
Milk Industry Regulatory Office María del Carmen Martínez Campos.

*** Judge Torruella heard oral argument in this matter and
participated in the semble, but he did not participate in the

　　　Rafael M. Santiago-Rosa, with whom José R. Negrón-Fernández, and Marichal, Hernández, Santiago & Juarbe, LLC were on brief, for appellant.

　　　Edward W. Hill, with whom The Law Offices of Edward W. Hill was on brief, for appellees.

　　　Rafael Escalera Rodríguez, with whom Viviana M. Berríos-González, and Reichard & Escalera, LLC were on brief, for intervenor-appellee, Suiza Dairy Corp.

　　　Enrique Nassar Rizek, with whom Enrique Nassar Rizek, Esq. ENR & Associates appeared, for intervenor-appellee Vaquería Tres Monjitas, Inc.

March 1, 2021

---

issuance of the panel's decision. The remaining two panelists therefore issued the opinion pursuant to 28 U.S.C. § 46(d).

**HOWARD**, **Chief Judge**.  This case is the latest episode in the long-running litigation over milk price regulation in Puerto Rico.  Although this Court has spent much ink recounting the history of this dispute -- see Vaquería Tres Monjitas, Inc. v. Comas-Pagán, 772 F.3d 956 (1st Cir. 2014); Vaquería Tres Monjitas, Inc. v. Comas-Pagán, 748 F.3d 21 (1st Cir. 2014); P.R. Dairy Farmers Ass'n v. Comas-Pagán, 748 F.3d 13 (1st Cir. 2014); Vaquería Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464 (1st Cir. 2009), reh'g and reh'g en banc denied, 600 F.3d 1 (1st Cir. 2010) -- we briefly lay out the relevant facts that have led us here and assume familiarity with our past decisions.  We ultimately hold that neither we, nor the district court, have federal subject matter jurisdiction over the instant dispute and therefore remand with instructions to send the case back to the Puerto Rico Court of First Instance.

## I.  Background

The relevant parties are familiar to us.  Appellant Industria Lechera de Puerto Rico, Inc. ("Indulac") is owned and operated by Fondo de Fomento de la Industria Lechera, a statutorily created entity whose purpose is to promote Puerto Rico's milk industry.  See Irizarry, 587 F.3d at 468.  Indulac is the only entity in Puerto Rico authorized to process ultra-high temperature milk ("UHT milk"), which does not need to be refrigerated before it is opened.  Id. at 468.

Appellees include Ramón González Beiró, in his official capacity as the acting Secretary of the Puerto Rico Department of Agriculture, and Jorge Campos Merced, the administrator of the Milk Industry Regulation Administration for the Commonwealth of Puerto Rico (Spanish acronym "ORIL"). ORIL, a subdivision of Puerto Rico's Department of Agriculture, regulates Puerto Rico's milk industry and has the power to set milk and milk-product prices. Id. at 469.

The appellees also include Puerto Rico dairy producers, Suiza Dairy, Inc. ("Suiza") and Vaquería Tres Monjitas ("VTM"). Id. at 467-68. Suiza and VTM purchase raw milk from local dairy farmers and process the milk into drinkable fresh milk. Id. at 468. Their fresh milk product is a direct competitor to Indulac's UHT milk. Id.

Suiza and VTM brought a lawsuit in 2004 in which they asserted that Puerto Rico's milk pricing regulations violated their rights under the Commerce Clause and the Fifth and Fourteenth Amendments of the United States Constitution, as well as under Puerto Rico law. Id. at 471-72. In 2007, the district court issued a preliminary injunction and ordered ORIL to adopt a mechanism to compensate retroactively Suiza and VTM at a "fair rate of return" from the year 2003 until ORIL could implement a new pricing regime. Id. at 472. To comply with the preliminary injunction, ORIL implemented a "regulatory accrual" mechanism that

placed a small surcharge on every quart of milk sold to consumers. The surcharge amount then went into an account to benefit Suiza and VTM. Id. at 477.

In 2013, "after almost a decade of litigation -- complete with various evidentiary hearings, three appeals, and the onset of contempt proceedings -- the principal parties settled" and ORIL agreed to promulgate an industry-shaping price regulation. Comas-Pagán, 772 F.3d at 957. The parties to the Agreement were the Secretary of Agriculture of Puerto Rico on behalf of the Government of Puerto Rico, ORIL, VTM, and Suiza. The Agreement required ORIL to promulgate a new regulatory scheme and enact a Milk Price Order effective November 7, 2013. The Agreement further provided that, once the November 2013 Price Order came into effect, "the regulatory accrual charge . . . will be deferred until January 1, 2017."

On November 7, 2013, the district court entered an order approving the Agreement and incorporating it as a consent decree. The district court retained jurisdiction of the case "for compliance purposes of all the covenants of the Settlement Agreement of October 29, 2013, or any other related matter and/or remedy related to the full compliance of the Settlement Agreement of October 29, 2013." Indulac, which had been an intervenor in that case -- but not a signatory to the Agreement -- moved to alter or amend the judgment. The district court denied Indulac's motion

on the basis that, as an intervenor, Indulac did not have standing to request that the judgment adopting and entering the Agreement as a consent decree be amended or modified.  See Vaquería Tres Monjitas, Inc. v. Comas, 992 F. Supp. 2d 39, 41 n.1 (D.P.R. 2013).

On December 29, 2016, ORIL issued a Price Order that reestablished the regulatory accrual surcharge on fresh milk products, effective January 1, 2017.  And on May 31, 2017, ORIL issued another Price Order extending the regulatory accrual surcharge over all fluid milk, including UHT milk, effective June 1, 2017.  The latter Price Order, which affects Indulac's UHT milk product, is the focus of this appeal.

## II.  Procedural History

On June 9, 2017, Indulac filed a challenge to ORIL's May 31, 2017 Price Order in the Puerto Rico Court of First Instance. Indulac argued that ORIL had failed to comply with three different procedural administrative requirements before issuing the May 2017 Price Order.  Specifically, Indulac alleged that ORIL failed to: (1) give Indulac proper notice of the proposed Price Order; (2) abide by a statutory requirement to hold public hearings and require the attendance of specific government officials, consider certain factors prescribed by statute, including a recommendation by the Secretary of Consumer Affairs, and conduct a market study before issuing the Price Order; and (3) publish the rule in three consecutive editions of a newspaper of general circulation as

required by statute. Because ORIL allegedly failed to comply with the applicable procedural rules, Indulac argued that the Price Order was void under Puerto Rico law and that its issuance violated Indulac's due process rights under the Constitution of the Commonwealth of Puerto Rico.

ORIL filed a notice of removal on June 27, 2017 and asserted federal jurisdiction based on 28 U.S.C. § 1331 and § 1441(a) and (c). ORIL contended that federal question jurisdiction existed because Indulac's lawsuit would "frustrate" the 2013 consent decree and cited "the All Writs Act (28 U.S.C. § 1651) and the Anti-Injunction Act (28 U.S.C. § 2283) in order to protect or effectuate [the Court's] judgment" (internal quotations omitted). ORIL also cited the district court's retention of jurisdiction to enforce the Agreement as supporting removal.

In addition, ORIL sought a preliminary and permanent injunction under the All Writs Act to enjoin the Puerto Rico Court proceedings in the event Indulac succeeded on a motion to remand the case back to the Puerto Rico Court. But Indulac did not oppose removal. Instead, Indulac acquiesced to the removal, stating that it would not seek remand if the district court found it had federal subject matter jurisdiction over the dispute.

The district court found that it had jurisdiction and denied ORIL's motion for injunctive relief as moot. Having found

jurisdiction, the district court granted ORIL's motion to dismiss for failure to state a claim.  Indulac appeals that dismissal.

### III.  Jurisdiction

Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it."  Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010); see also Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 16 (1st Cir. 2018) ("[F]ederal subject-matter jurisdiction can never be presumed, nor can it be conferred by acquiescence or consent.")  Therefore, we must "raise and decide jurisdictional questions that the parties either overlook or elect not to press." Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 434 (2011). Mindful of these principles, our review of the district court's "retention of subject-matter jurisdiction over a removed case [is] de novo."  Lawless, 894 F.3d at 16-17.

Federal courts have jurisdiction "over two general types of cases: cases that 'aris[e] under' federal law" and "cases in which the amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties."  Home Depot U.S.A., Inc. v. Jackson, 139 S. Ct. 1743, 1746 (2019) (citing 28 U.S.C. §§ 1331, 1332(a)).  Defendants may remove a "state-court action over which the federal courts would have original jurisdiction . . . to federal court" under the general removal statute, 28 U.S.C. § 1441. Id.  All the parties before us are citizens of Puerto Rico, which

- 8 -

precludes the existence of diversity jurisdiction, and ORIL did not claim diversity jurisdiction supported removal. Therefore, if federal jurisdiction exists, it must be supported by an issue that arises under federal law; this type of jurisdiction is often referred to as federal question jurisdiction. See, e.g., Ortiz-Bonilla v. Federación de Ajedrez de P.R., Inc., 734 F.3d 28, 34 (1st Cir. 2013) ("For cases, like this one, where there is no diversity of citizenship between parties, removal jurisdiction turns on whether the case falls within 'federal question' jurisdiction.").

Two types of actions may come within federal question jurisdiction: those involving a direct federal question (for example, an action premised on a federal statute or the United States Constitution), and those involving an "embedded federal question." Id. There is no direct federal question in Indulac's petition, as no "federal law creates the cause of action asserted." Gunn v. Minton, 568 U.S. 251, 257 (2013). To the contrary, only Puerto Rico law creates the cause of action. As to jurisdiction under the second type of action, often referred to as federal ingredient jurisdiction, such jurisdiction lies only in a "special and small category" of cases in which a "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and

- 9 -

state judicial responsibilities." Id. at 258 (first quoting Empire HealthChoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 699 (2006); then quoting Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005)).  Because Indulac's petition sounds only in Puerto law and not in federal law, and because its Puerto Rico claims cannot be said to raise any stated, disputed, and substantial federal issues, this action does not fall within federal ingredient jurisdiction either.

Nonetheless, in its order finding jurisdiction, the district court reasoned that the "instant controversy is intrinsically related to the [Agreement]" and that it had federal question jurisdiction over this case because it "retained jurisdiction to enforce the covenants of the [Agreement]." Consequently, we read the district court's order finding jurisdiction and the amended opinion on which this appeal is based to reflect the district court's view that its power to decide this dispute stems from its jurisdiction to enforce the 2013 consent decree.  This was error.

Metheny v. Becker, 352 F.3d 458 (1st Cir. 2003), is our controlling precedent.  There, the plaintiff filed a lawsuit in state court arguing, in part, that a local zoning board "had abused its discretion and thus violated Commonwealth law in failing to follow certain procedures in connection with its decision making." Id. at 459.  The defendant removed the case to federal district

court on the basis of federal question jurisdiction because the case "ar[ose] directly from, and constitute[d] a collateral challenge to," an earlier settlement incorporated into a federal judgment. Id. And, like here, the defendant cited the All Writs Act in support of its removal argument. Id.

We found that removal was improper for reasons that are relevant here. Id. at 460-61. First, "[t]hat the case might be regarded as an improper attack on a prior federal judgment does not provide grounds for removal." Id. at 460 (citing Rivet v. Regions Bank of La., 522 U.S. 470, 474-77 (1998)). Further, the complaint in Metheny "sound[ed] only in Commonwealth law." Id. And finally, "[t]he existence of the consent decree in the prior judgment [did] not authorize removal under the All Writs Act." Id. (citing Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 31-34 (2002)).

The principles underlying our Metheny decision apply here with equal force. Most obviously -- and similar to the complaint in Metheny -- Indulac's petition is based on a failure to comply with Puerto Rico law, not federal law. Id. Second, the existence of the prior federal consent decree is a potential defense that cannot independently grant federal jurisdiction. See Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987) ("[I]t is now settled law that a case may not be removed to federal court on the basis of a federal defense"); see also Rivet, 522 U.S. at 477

("[C]laim preclusion by reason of a prior federal judgment is a defensive plea that provides no basis for [federal question] removal."). And the fact that Indulac's petition for review may disrupt ORIL's ability to comply with the consent decree is not grounds for removal jurisdiction. See City of Warren v. City of Detroit, 495 F.3d 282, 288-89 (6th Cir. 2007) (defendant could not remove on basis that plaintiff's claim could impact ability of one party to comply with a federal consent judgment).

As to appellees' arguments that the All Writs Act and the Anti-Injunction Act give the federal courts jurisdiction to hear this case, they are wrong. The Supreme Court foreclosed these arguments almost two decades ago in Syngenta Crop Protection, Inc. v. Henson, 537 U.S. 28 (2002) (overruling Xiong v. Minnesota, 195 F.3d 424 (8th Cir. 1999), cited by appellees). The Court clarified that the removal requirements in 28 U.S.C. § 1441 are "to be strictly construed" and that the All Writs Act does not give parties free reign to "avoid complying with the statutory requirements for removal." 537 U.S. at 32-33. The "All Writs Act does not confer jurisdiction on the federal courts" and so "cannot confer the original jurisdiction required to support removal pursuant to § 1441." Id. at 33. We recognized the same in Metheny and do so again here. See 352 F.3d at 460.

To the extent appellees or the district court relied on the doctrine of ancillary jurisdiction -- sometimes referred to as

- 12 -

"enforcement jurisdiction," see U.S.I. Props. Corp. v. M.D. Constr. Co., 230 F.3d 489, 496 (1st Cir. 2000) -- to support removal, such reliance was also in error. Ancillary jurisdiction "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 378 (1994). The Supreme Court has approved the exercise of ancillary jurisdiction in a "broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments -- including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances." Peacock v. Thomas, 516 U.S. 349, 356-57 (1996) (collecting cases). However, the Supreme Court has squarely rejected the notion that ancillary jurisdiction can support removal under § 1441 absent an independent basis for original jurisdiction. Syngenta, 537 U.S. at 34 ("Removal is governed by statute, and invocation of ancillary jurisdiction . . . does not dispense with the need for compliance with statutory requirements."). As such, ancillary jurisdiction cannot support removal here.

We note, as we noted in Metheny and as the Supreme Court observed in Syngenta, that a federal court, under the All Writs Act and the relitigation exception of the Anti-Injunction Act, "may enjoin state-court proceedings 'where necessary . . . to

- 13 -

protect or effectuate its judgment.'" Metheny, 352 F.3d at 462 (quoting Rivet, 522 U.S. at 478 n.3); see also Syngenta, 537 U.S. at 34 n.* ("One in petitioners' position may apply to the court that approved a settlement for an injunction requiring dismissal of a rival action."). ORIL sought such injunctive relief below to enjoin the Puerto Rico proceeding, which the district court denied as moot based on its finding of removal jurisdiction. That avenue still remains a possibility for relief, and its potential availability reveals one reason why our jurisdictional ruling does not exalt form over substance: there are material differences between what a court considers in the context of a removed case and what it considers before entering an injunction.

In the event that ORIL later renews its request for injunctive relief to the district court under the All Writs Act and Anti-Injunction Act, some issues that might confront the district court include the scope of a potential injunction, how it might be crafted to respect the sovereign interests of Puerto Rico, and ultimately whether an injunction would be a proper exercise of the court's equitable power. See, e.g., Fernández-Vargas v. Pfizer Pharm., Inc., No. 04-2236 (JAF), 2006 WL 3254463, at *5-8 (D.P.R. Nov. 8, 2006) (considering, inter alia, the "wasteful expense of relitigating"), aff'd, 522 F.3d 55 (1st Cir. 2008); see also Mitchum v. Foster, 407 U.S. 225, 243 (1972) (noting the "principles of equity, comity, and federalism that must restrain a federal

- 14 -

court when asked to enjoin a state court proceeding").  We emphasize, however, that we take no view as to the merits of any such effort to enjoin the Puerto Rico proceedings.

### IV.  Conclusion

Finding no federal jurisdiction, we **vacate and remand** to the district court with instructions to return this case to the Puerto Rico Court of First Instance.  No costs are awarded.