# United States Court of Appeals
## For the First Circuit

No. 22-1092

IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE COMMONWEALTH OF PUERTO RICO; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO SALES TAX FINANCING CORPORATION, a/k/a Cofina; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA); THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE OF THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,

Debtors,

---

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE COMMONWEALTH OF PUERTO RICO; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE OF THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,

Debtors, Appellees, Cross-Appellants,

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,

Debtor, Appellee,

v.

COOPERATIVA DE AHORRO Y CREDITO ABRAHAM ROSA; COOPERATIVA DE AHORRO Y CREDITO DE CIALES; COOPERATIVA DE AHORRO Y CREDITO DE JUANA DIAZ; COOPERATIVA DE AHORRO Y CREDITO DE RINCON; COOPERATIVA DE AHORRO Y CREDITO DE VEGA ALTA; COOPERATIVA DE

AHORRO Y CREDITO DR. MANUEL ZENO GANDIA,

Objectors, Appellants, Cross-Appellees,

SUIZA DAIRY CORP.,

Objector, Claimant, Appellant, Cross-Appellee,

LUIS F. PABON BOSQUES; RAUL MARTINEZ PEREZ; ELVIN A. ROSADO MORALES; CARLOS A. ROJAS ROSARIO; RAFAEL TORRES RAMOS,

Creditors, Appellants, Cross-Appellees,

DESARROLLADORA ORAMA, S.E.; C.O.D. TIRE DISTRIBUTORS IMPORTS ASIA, INC.; CORREA TIRE DISTRIBUTOR INC.; WORLD WIDE TIRE, INC.; SEQUERIA TRADING CORPORATION; SABATIER TIRE CENTER, INC.; VICTOR LOPEZ CORTES, INC.; MULTI GOMAS, INC.; JOSE COLLAZO PEREZ; IVELISSE TAVARES MARRERO; MANUEL PEREZ ORTIZ; CORAL COVE, INC.; SUCESION ANGEL ALVAREZ PEREZ; ANTONIO COLON SANTIAGO; COOPERATIVA DE AHORRO Y CREDITO DE AGUADA; VILMA TERESA TORRES LOPEZ; VIVIANA ORTIZ MERCADO; ORLANDO TORRES BERRIOS; GERMAN TORRES BERRIOS; JUAN ALBERTO TORRES BERRIOS; VHERMANOS TORRES, INC.; CORPORACION PLAYA INDIA, S.E.; MARIANO RAMOS GONZALEZ; RAMON MORAN LOUBRIEL; RAFAEL MORAN LOUBRIEL; ANA MORAN LOUBRIEL; SAN GERONIMO CARIBE PROJECT, INC.; CARIBBEAN AIRPORT FACILITIES INC.; ESTATE OF RAUL DE PEDRO & DIANA MARTINEZ; ALFONSO FERNANDEZ CRUZ; SUN AND SAND INVESTMENTS, CORP.; FDR1500, CORP.; MARGARETA BLONDET; SUCESION COMPUESTO POR MARIA I. RUBERT BLONDET; SONIA RUBERT BLONDET; MARGARITA RUBERT BLONDET; SONIA RUBERT, Administradora; MANUEL A. RIVERA-SANTOS; JORGE RIVERA-SANTOS; CARLOS MANUEL RIVERA-SANTOS; PABLO MELENDEZ BRULLA; SUCESION AGUSTIN RODRIGUEZ COLON; GLORIA M. ESTEVA MARQUES; SUCESION MANUEL MARTINEZ RODRIGUEZ; LUIS REYES FEIKERT; JORGE RAMON POZAS; MIRIAM SANCHEZ LEBRON; JUAN A. TAPIA ORTIZ; ANTONIO PEREZ COLON;

Claimants, Appellees,

PFZ PROPERTIES, INC.; OSCAR ADOLFO MANDRY APARICIO; MARIA DEL CARMEN AMALIA MANDRY LLOMBART; SELMA VERONICA MANDRY LLOMBART; MARIA DEL CARMEN LLOMBART BAS; OSCAR ADOLFO MANDRY BONILLA; GUSTAVO ALEJANDRO MANDRY BONILLA; YVELISE HELENA FINGERHUT MANDRY; MARGARET ANN FINGERHUT MANDRY; VICTOR ROBERT FINGERHUT MANDRY; JUAN CARLOS ESTEVA FINGERHUT; PEDRO MIGUEL ESTEVA FINGERHUT; MARIANO JAVIER MCCONNIE FINGERHUT; JANICE MARIE MCCONNIE FINGERHUT; VICTOR MICHAEL FINGERHUT COCHRAN; MICHELLE ELAINE FINGERHUT COCHRAN; ROSA ESTELA MERCADO GUZMAN; EDUARDO

JOSE MANDRY MERCADO; SALVADOR RAFAEL MANDRY MERCADO; MARGARITA ROSA MANDRY MERCADO; ADRIAN ROBERTO MANDRY MERCADO; VICENTE PEREZ ACEVEDO; CORPORACION MARCARIBE INVESTMENT; DEMETRIO AMADOR INC.; DEMETRIO AMADOR ROBERTS; MARUZ REAL ESTATE CORP.; LORTU-TA LTD., INC.; LA CUARTEROLA, INC.; JUAZA, INC.; CONJUGAL PARTNERSHIP ZALDUONDO-MACHICOTE; FRANK E. TORRES RODRIGUEZ; EVA TORRES RODRIGUEZ; FINCA MATILDE, INC.; JORGE RAFAEL EDUARDO COLLAZO QUINONES,

Objectors, Claimants, Appellees,

ANTONIO MARTIN CERVERA; MARIA TERESITA MARTIN; WANDA ORTIZ SANTIAGO; NANCY I. NEGRON-LOPEZ; GROUP WAGE CREDITORS; YASHEI ROSARIO; ANA A. NUNEZ VELAZQUEZ; EDGARDO MARQUEZ LIZARDI; MARIA M. ORTIZ MORALES; ARTHUR SAMODOVITZ; MIGUEL LUNA DE JESUS; ISMAEL L. PURCELL SOLER; ALYS COLLAZO BOUGEOIS; MILDRED BATISTA DE LEON; JAVIER ALEJANDRINO OSORIO; SERVICE EMPLOYEES INTERNATIONAL UNION (SEIU); INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA; MAPFRE PRAICO INSURANCE COMPANY; CERTAIN CREDITORS WHO FILED ACTIONS IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO; MED CENTRO, INC., f/k/a Consejo de Salud de la Comunidad de la Playa de Ponce, Inc.; ASOCIACION DE JUBILADOS DE LA JUDICATURA DE PUERTO RICO; HON. HECTOR URGELL CUEBAS; COOPERATIVA DE AHORRO Y CREDITO VEGABAJENA; UNIVERSITY OF PUERTO RICO RETIREMENT SYSTEM TRUST; PETER C. HEIN; MIRIAM E. LIMA COLON; BETZAIDA FELICIANO CONCEPCION; ANGEL L. MENDEZ GONZALEZ; ASOCIACION DE MAESTROS PUERTO RICO; ASOCIACION DE MAESTROS DE PUERTO RICO-LOCAL SINDICAL; MORGAN STANLEY & CO. LLC; GOLDMAN SACHS & CO. LLC; J.P. MORGAN SECURITIES LLC; SANTANDER SECURITIES LLC; SIDLEY AUSTIN LLP; BMO CAPITAL MARKETS GKST, INC.; CITIGROUP GLOBAL MARKETS INC.; SAMUEL A. RAMIREZ & CO., INC.; MESIROW FINANCIAL, INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH INC.; MERRILL LYNCH CAPITAL SERVICES, INC.; BARCLAYS CAPITAL INC.; RBC CAPITAL MARKETS, LLC; RAYMOND JAMES & ASSOCIATES, INC.; COMMUNITY HEALTH FOUNDATION OF P.R. INC.; QUEST DIAGNOSTICS OF PUERTO RICO, INC.; U.S. BANK TRUST NATIONAL ASSOCIATION, as Trustee for the PRPFC Outstanding Bonds and PRIFA Bonds, and Fiscal Agent for PRPBA Bonds; U.S. BANK NATIONAL ASSOCIATION, as Trustee for the PRPFC Outstanding Bonds and PRIFA Bonds, and Fiscal Agent for PRPBA Bonds; NILSA CANDELARIO; EL OJO DE AGUA DEVELOPMENT, INC.; PEDRO JOSE NAZARIO SERRANO; JOEL RIVERA MORALES; MARIA DE LOURDES GOMEZ PEREZ; HECTOR CRUZ VILLANUEVA; LOURDES RODRIGUEZ; LUIS M. JORDAN RIVERA; TACONIC CAPITAL ADVISORS LP; AURELIUS CAPITAL MANAGEMENT, LP; CANYON CAPITAL ADVISORS LLC; FIRST BALLANTYNE LLC; MOORE CAPITAL MANAGEMENT, LP; PUERTO RICO FISCAL AGENCY AND

FINANCIAL ADVISORY AUTHORITY; HON. PEDRO R. PIERLUISI URRUTIA; UNITED STATES, on behalf of the Internal Revenue Service; ASOCIACION PUERTORRIQUENA DE LA JUDICATURA, INC.; FEDERACION DE MAESTROS DE PUERTO RICO, INC.; GRUPO MAGISTERIAL EDUCADORES(AS) POR LA DEMOCRACIA, UNIDAD, CAMBIO, MILITANCIA Y ORGANIZACION SINDICAL, INC.; UNION NACIONAL DE EDUCADORES Y TRABAJADORES DE LA EDUCACION, INC.; MARIA A. CLEMENTE ROSA; JOSE N. TIRADO GARCIA, as President of the United Firefighters Union of Puerto Rico,

Objectors, Appellees,

VAQUERIA TRES MONJITAS, INC.; BLACKROCK FINANCIAL MANAGEMENT, INC.; EMSO ASSET MANAGEMENT LIMITED; MASON CAPITAL MANAGEMENT, LLC; SILVER POINT CAPITAL, L.P.; VR ADVISORY SERVICES, LTD; AURELIUS CAPITAL MANAGEMENT, LP, on behalf of its managed entities; GOLDENTREE ASSET MANAGEMENT LP, on behalf of funds under management; WHITEBOX ADVISORS LLC, on behalf of funds under management; MONARCH ALTERNATIVE CAPITAL LP, on behalf of funds under management; TACONIC CAPITAL ADVISORS L.P., on behalf of funds under management; ARISTEIA CAPITAL, LLC, on behalf of funds under management; FARMSTEAD CAPITAL MANAGEMENT, LLC, on behalf of funds under management; FOUNDATION CREDIT, on behalf of funds under management; CANYON CAPITAL ADVISORS LLC, in its capacity as a member of the QTCB Noteholder Group; DAVIDSON KEMPNER CAPITAL MANAGEMENT LP, in its capacity as a member of the QTCB Noteholder Group; SCULPTOR CAPITAL LP, in its capacity as a member of the QTCB Noteholder Group; SCULPTOR CAPITAL II LP, in its capacity as a member of the QTCB Noteholder Group; AMBAC ASSURANCE CORPORATION; ANDALUSIAN GLOBAL DESIGNATED ACTIVITY COMPANY; CROWN MANAGED ACCOUNTS, for and on behalf of Crown/PW SP; LMA SPC, for and on behalf of Map 98 Segregated Portfolio; MASON CAPITAL MASTER FUND LP; OAKTREE-FORREST MULTI-STRATEGY, LLC (SERIES B); OAKTREE OPPORTUNITIES FUND IX, L.P.; OAKTREE OPPORTUNITIES FUND IX (PARALLEL), L.P.; OAKTREE OPPORTUNITIES FUND IX (PARALLEL 2), L.P.; OAKTREE HUNTINGTON INVESTMENT FUND II, L.P.; OAKTREE OPPORTUNITIES FUND X, L.P.; OAKTREE OPPORTUNITIES FUND X (PARALLEL), L.P.; OAKTREE OPPORTUNITIES FUND X (PARALLEL 2), L.P.; OAKTREE VALUE OPPORTUNITIES FUND HOLDINGS, L.P.; OCEANA MASTER FUND LTD.; OCHER ROSE, L.L.C.; PENTWATER MERGER ARBITRAGE MASTER FUND LTD.; PWCM MASTER FUND LTD.; REDWOOD MASTER FUND, LTD.; BANK OF NEW YORK MELLON; OFFICIAL COMMITTEE OF UNSECURED CREDITORS; ASSURED GUARANTY CORP.; ASSURED GUARANTY MUNICIPAL CORP.; OFFICIAL COMMITTEE OF RETIRED EMPLOYEES; NATIONAL PUBLIC FINANCE GUARANTEE CORP.; FINANCIAL GUARANTY INSURANCE COMPANY; AMERINATIONAL COMMUNITY SERVICES, LLC, as servicer for the GDB

Debt Recovery Authority; CANTOR-KATZ COLLATERAL MONITOR LLC, as Collateral Monitor for the GDB Debt Recovery Authority.; ATLANTIC MEDICAL CENTER, INC.; CAMUY HEALTH SERVICES, INC.; CENTRO DE SALUD FAMILIAR DR. JULIO PALMIERI FERRI, INC.; CIALES PRIMARY HEALTH CARE SERVICES, INC.; CORP. DE SERV. MEDICOS PRIMARIOS Y PREVENCION DE HATILLO, INC.; COSTA SALUD, INC.; CENTRO DE SALUD DE LARES, INC.; CENTRO DE SERVICIOS PRIMARIOS DE SALUD DE PATILLAS, INC.; HOSPITAL GENERAL CASTANER, INC.; GNMA & US GOVERNMENT TARGET MATURITY FUND FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc.; MORTGAGE-BACKED & US GOVERNMENT SECURITIES FUND FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc.; PUERTO RICO RESIDENTS BOND FUND I, f/k/a Puerto Rico Investors Bond Fund I; PUERTO RICO RESIDENTS TAX-FREE FUND, INC., f/k/a Puerto Rico Investors Tax-Free Fund, Inc.; PUERTO RICO RESIDENTS TAX-FREE FUND II, INC., f/k/a Puerto Rico Investors Tax-Free Fund II, Inc.; PUERTO RICO RESIDENTS TAX-FREE FUND III, INC., f/k/a Puerto Rico Investors Tax-Free Fund III, Inc.; PUERTO RICO RESIDENTS TAX-FREE FUND IV, INC., f/k/a Puerto Rico Investors Tax-Free Fund IV, Inc.; PUERTO RICO RESIDENTS TAX-FREE FUND V, INC., f/k/a Puerto Rico Investors Tax-Free Fund V, Inc.; PUERTO RICO RESIDENTS TAX-FREE FUND VI, INC., f/k/a Puerto Rico Investors Tax-Free Fund VI, Inc.; TAX-FREE FIXED INCOME FUND FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico Fixed Income Fund, Inc.; TAX-FREE FIXED INCOME FUND II FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico Fixed Income Fund II, Inc.; TAX-FREE FIXED INCOME FUND III FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico Fixed Income Fund III, Inc.; TAX-FREE FIXED INCOME FUND IV FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico Fixed Income Fund IV, Inc.; TAX-FREE FIXED INCOME FUND V FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico Fixed Income Fund V, Inc.; TAX-FREE FIXED INCOME FUND VI FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico Fixed Income Fund VI, Inc.; TAX FREE FUND FOR PUERTO RICO RESIDENTS, INC., f/k/a Tax-Free Puerto Rico Fund, Inc.; TAX FREE FUND II FOR PUERTO RICO RESIDENTS, INC., f/k/a Tax-Free Puerto Rico Fund II, Inc.; TAX-FREE HIGH GRADE PORTFOLIO BOND FUND FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico AAA Portfolio Bond Fund, Inc.; TAX-FREE HIGH GRADE PORTFOLIO BOND FUND II FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico AAA Portfolio Bond Fund II, Inc.; TAX-FREE HIGH GRADE PORTFOLIO TARGET MATURITY FUND FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico AAA Portfolio Target Maturity Fund, Inc.; TAX FREE TARGET MATURITY FUND FOR PUERTO RICO RESIDENTS, INC., f/k/a Tax-Free Puerto Rico Target Maturity Fund, Inc.; UBS IRA SELECT GROWTH & INCOME PUERTO RICO FUND; SERVICIOS

INTEGRALES EN LA MONTANA (SIM),

Creditors, Appellees,

UNITED STATES,

Respondent, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Laura Taylor Swain,* U.S. District Judge]

---

Before

Kayatta, Howard, and Thompson,
Circuit Judges.

---

Victor M. Rivera-Rios on brief for appellants, cross-appellees Luis F. Pabón Bosques, Raul Martinez Perez, Elvin A. Rosado Morales, Carlos A. Rojas Rosario, and Rafael Torres Ramos.

Guillermo Ramos-Luiña for appellants, cross-appellees Cooperativa de Ahorro y Crédito Abraham Rosa, Cooperativa de Ahorro y Crédito de Ciales, Cooperativa de Ahorro y Crédito de Rincón, Cooperativa de Ahorro y Crédito de Vega Alta, Cooperativa de Ahorro y Crédito Dr. Manuel Zeno Gandía, and Cooperativa de Ahorro y Crédito de Juana Díaz.

Rafael A. Gonzalez-Valiente, with whom Godreau & Gonzalez Law, LLC was on brief, for appellant, cross-appellee Suiza Dairy Corporation.

Martin J. Bienenstock, with whom Jeffrey W. Levitan, Mark D. Harris, Brian S. Rosen, Ehud Barak, Lucas Kowalczyk, Timothy W. Mungovan, John E. Roberts, Adam L. Deming, Joseph S. Hartunian, and Proskauer Rose LLP were on brief, for appellee, cross-appellant Financial Oversight and Management Board for Puerto Rico.

Peter Friedman, with whom John J. Rapisardi, Maria J. DiConza, and O'Melveny & Myers LLP were on brief, for appellees Governor Pedro R. Pierluisi and the Puerto Rico Fiscal Agency and Financial Advisory Authority.

Ana A. Núñez Velázquez, Aguadilla, PR, Pro Se.

---

* Of the Southern District of New York, sitting by designation.

Charles A. Cuprill-Hernández, for appellees Oscar Adolfo Mandry Aparicio, María del Carmen Amalia Mandry Llombart, Selma Verónica Mandry Llombart, María del Carmen Llombart Bas, Oscar Adolfo Mandry Bonilla, Gustavo Alejandro Mandry Bonilla, Yvelise Helena Fingerhut Mandry, Margaret Ann Fingerhut Mandry, Victor Robert Fingerhut Mandry, Juan Carlos Esteva Fingerhut, Pedro Miguel Esteva Fingerhut, Mariano Javier McConnie Fingerhut, Janice Marie McConnie Fingerhut, Victor Michael Fingerhut Cochran, Michelle Elaine Fingerhut Cochran, Rosa Estela Mercado Guzmán, Eduardo José Mandry Mercado, Salvador Rafael Mandry Mercado, Margarita Rosa Mandry Mercado, and Adrián Roberto Mandry Mercado.

Daniel Winik, Attorney, Civil Division, with whom Brian M. Boynton, Principal Deputy Assistant Attorney General, W. Stephen Muldrow, United States Attorney, Michael S. Raab, Attorney, Civil Division, and Michael Shih, Attorney, Civil Division, were on brief, for intervenor, appellee the United States.

Russell A. Del Toro Sosa, with whom David Carrion Baralt was on brief, for appellee PFZ Properties, Inc.

Maria Mercedes Figueroa Morgade for appellees Demetrio Amador Inc. and Demetrio Amador Roberts.

Alexis Fuentes-Hernández for appellees Maruz Real Estate Corp., Lortu-Ta LTD., Inc., La Cuarterola, Inc., Juaza, Inc., Frank E. Torres Rodriguez, and Eva Torres Rodriguez.

Eduardo J. Capdevila-Díaz, with whom Isabel M. Fullana-Fraticelli and Isabel Fullana-Fraticelli & Assocs., P.S.C. were on brief, for appellee Finca Matilde, Inc.

Carlos Fernandez-Nadal on brief for appellee Jorge Rafael Eduardo Collazo Quinones.

Maximiliano Trujillo-González on brief for appellees Manuel A. Rivera-Santos, Jorge Rivera-Santos, and Carlos Manuel Rivera-Santos.

Juan A. Tapia Ortiz, Brooklyn, NY, Pro Se.

---

August 22, 2023

---

**HOWARD, Circuit Judge.** Suiza Dairy and the Commonwealth of Puerto Rico spent years in litigation over the Commonwealth's milk regulation scheme. After the dispute was resolved by a settlement between the parties, the Commonwealth entered Title III proceedings to adjust its sovereign debt. Under the Title III Plan of Adjustment, the Commonwealth is discharged from its obligation to pay to Suiza the full amount specified in the settlement. Suiza argues that, for a number of reasons, the Title III court was wrong to confirm a Plan that permitted this discharge.

After careful consideration of each of Suiza's arguments, we affirm.

## I. BACKGROUND

Although we assume familiarity with the litigation between Suiza and the Commonwealth, as well as the Commonwealth's Title III proceedings, we recount the facts and developments that are particularly relevant to the present appeal below. A more exhaustive account can be found in our previous opinions. See, e.g., Industria Lechera De Puerto Rico, Inc. v. Beiró, 989 F.3d 116, 118-19 (1st Cir. 2021); Fin. Oversight & Mgmt. Bd. for P.R. v. Federacion de Maestros de P.R., Inc. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 32 F.4th 67, 74-75 (1st Cir. 2022); Méndez-Núñez v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 916 F.3d 98, 103-04 (1st Cir. 2019).

- 8 -

Suiza is a Puerto Rico milk processor. Producers of milk sell the raw product to Suiza; Suiza processes it; and that processed milk is eventually sold to consumers. Vaquería Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 468 (1st Cir. 2009). In Puerto Rico, the milk industry is regulated by the Milk Industry Regulation Administration for the Commonwealth of Puerto Rico ("ORIL" is its Spanish acronym). Id. In August 2004, Suiza (as well as another milk producer, VTM) filed a complaint in the District of Puerto Rico alleging that ORIL's regulatory scheme violated their rights under the Commerce Clause and the Fifth and Fourteenth Amendments of the United States Constitution and under Commonwealth law. Id. at 471-72. They sought to enjoin ORIL's regulatory scheme and requested a declaratory judgment that the ORIL Administrator's acts were unconstitutional. Id. at 471. Among other plaints, they alleged that "ORIL's regulatory structure, which precluded them from making a reasonable profit in their milk business, constituted a confiscation of property in violation of the Takings Clause." Id. VTM and Suiza moved for a preliminary injunction to prevent the Administrator of ORIL from continuing to implement the contested regulations. Id. at 472.

The district court granted the preliminary injunction, reasoning that Suiza and VTM had a likelihood of success on the merits. Vaquería Tres Monjitas, Inc. v. Laboy, 2007 WL 7733665

(D.P.R. July 13, 2007), aff'd sub nom. Vaquería Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464 (1st Cir. 2009). It also ordered that a temporary mechanism be put in place as a remedy. To comply with this order, ORIL "implemented a 'regulatory accrual' mechanism that placed a small surcharge on every quart of milk sold to consumers." Beiró, 989 F.3d at 119. The surcharge "then went into an account to benefit Suiza and VTM." Id.

On appeal, we affirmed the grant of a preliminary injunction, reasoning that VTM and Suiza had a likelihood of success on their due process argument. Irizarry, 587 F.3d. at 483. Accordingly, we saw no need to reach the Takings Clause claim and we noted that our decision was in no way a "commentary on [the] merits" of that claim. Id. at 483 n.18.

In 2013, VTM and Suiza reached a settlement with ORIL and the Secretary of Puerto Rico's Department of Agriculture on behalf of Puerto Rico, ending the aforementioned litigation. Beiró, 989 F.3d at 119. Pursuant to the agreement, ORIL would "promulgate a new regulatory scheme." Id. The settlement also specified that Suiza and VTM were owed approximately $171 million in "regulatory accrual," -- approximately $123 million of which was owed to Suiza -- and designated two sources for payment of that liquidated accrual amount. First, as specified in paragraph 14 of the settlement agreement, the Commonwealth would contribute just over half of the amount in direct payments to Suiza and VTM.

Second, milk prices would be increased, such that the remaining balance of the regulatory accrual would be borne by consumers, over time, through the surcharge.

The settlement agreement explained that it was a "final, absolute, binding and unappealable Judgment." Moreover, the parties agreed that the stipulation would "have the effect of dismissing the instant case with prejudice." The agreement specified that the "parties have agreed to settle all matters pending in the instant action . . . without conceding any of Plaintiffs['] . . . claims as alleged in the complaint, or the validity of any of the judicial orders, opinions or resolutions entered by [the various courts]." In November 2013, the district court entered an order approving the settlement agreement and incorporating it as a consent decree. Id.

**B.**

In May of 2017, the Financial Oversight and Management Board of Puerto Rico ("FOMB" or the "Board") filed a series of Title III petitions on behalf of Puerto Rico. These petitions "commence[d] proceedings to restructure the debts of the Commonwealth and a number of its instrumentalities." Fin. Oversight & Mgmt. Bd. for P.R. v. Cooperativa de Ahorro y Credito Abraham Rosa (In re Fin. Oversight & Mgmt. Bd.), 41 F.4th 29, 38 (1st Cir. 2022).

- 11 -

Suiza filed a proof of claim. This proof described Suiza's claim as a $48,485,151.22 "NON-DISCHARGABLE REGULATORY ACCRUAL CLAIM FOR U.S. CONSTITUTION[AL] VIOLATIONS INVOLVING [THE] TAKINGS CLAUSE." Suiza also checked the box that indicated that its claim was unsecured. FOMB has not objected to Suiza's proof of claim.[1]

The Title III proceedings involved lengthy negotiations involving a variety of stakeholders. Id. Ultimately, the Board submitted a Modified Eighth Amended Plan of Adjustment for the Commonwealth and two of its instrumentalities (the "Plan"),[2] which the Title III court confirmed. The Plan treats Suiza's claim as part of Class 53, a group of "Dairy Producer" claimants that are entitled to receive, in full consideration of any allowed claim, 50% of the claim.[3] The Plan also specifies that "the Commonwealth's obligation for the regulatory approval accrual set forth in

_____

[1] FOMB asserts, and Suiza does not dispute, that FOMB was not yet time-barred from filing an objection to Suiza's proof of claim when the Board submitted the Plan. However, for the reasons discussed in Section II.B. of this opinion, we conclude that FOMB need not file a formal objection to Suiza's claim for us to address and resolve the issues presented by this appeal (despite Suiza's insistence to the contrary).

[2] The Plan of adjustment under the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") designates classes of claims to be adjusted and specifies treatments for any class of claim that is impaired.

[3] Suiza was to be paid in three installments, first on the effective date of the Plan, then in July of each fiscal year.

- 12 -

decretal paragraph 14 of the [settlement] shall be treated and discharged in accordance with the Plan and shall not be recouped by a holder of a Dairy Produce[r] Claim from any other source." Plan § 57.1.

A separate group of claimants ("takings claimants") filed proofs of claim in which they explained that their claims were for just compensation for pre-petition takings. Cooperativa de Ahorro y Credito Abraham Rosa, 41 F.4th at 38. After motions practice and several days of hearings, the district court concluded that the Plan must provide full payment to the takings claimants. In re Fin. Oversight & Mgmt. Bd., 637 B.R. 223, 294-98 (D.P.R. 2022). The Plan thus classified these claims as Class 54 and specified that Class 54 claimants are entitled to payment in full (i.e., to receive 100% payment of allowed claims). Plan § 58.1. The Board appealed, and we affirmed the Title III court's conclusion that the pre-petition takings claims must be paid in full. Cooperativa de Ahorro y Credito Abraham Rosa, 41 F.4th at 46.

Suiza objected to confirmation of the Plan. It made four arguments. First, it argued that it had a Takings Clause claim that was non-dischargeable. Next, it maintained that because its claim had not been objected to, it must be deemed allowed and could not be modified through the plan confirmation process. Third, Suiza claimed that the Plan unfairly discriminated against

- 13 -

Suiza, given that its takings claims were not exempted from discharge but the Class 54 claims were. Finally, it contended that the Plan provided an improper third-party release by precluding Suiza from recouping the discharged portion of the Commonwealth's obligation from another source.

The Title III court overruled Suiza's objections and confirmed the Plan. The court reasoned that Suiza had not "demonstrated that it has a factual or legal basis for its assertion that it holds a valid Takings Clause Claim that is protected by the Fifth Amendment." Specifically, the court explained, Suiza settled its dispute before receiving a final judgment on its Takings Clause claim. The court highlighted that the settlement made no concession about the validity of the takings claims, and provided that it would constitute a final judgment dismissing the action with prejudice. The court consequently concluded that Suiza had only a "contract-based claim for payment pursuant to the [settlement]," which could be impaired in bankruptcy.

## II. DISCUSSION

Suiza reiterates the arguments it made to the Title III court. We consider and reject each argument in turn.

### A.

The Plan properly classifies Suiza's claim as a non-takings claim. Whether or not a constitutionally recognized taking

occurred, Suiza relinquished any takings claim it might have had when it voluntarily entered a settlement agreement in 2013.

"[S]ettlement agreements, if valid and not against public policy, are voluntary surrenders of the right to have one's day in court." Bandera v. City of Quincy, 344 F.3d 47, 52 (1st Cir. 2003). In maintaining that, despite the settlement, it continues to have a cognizable takings claim, Suiza asks us to re-write the law of settlements. As the Supreme Court explained over a century ago:

> Much the largest number of controversies between business men are ultimately settled by the parties themselves; and when there is no unfairness, and all the facts are equally known to both sides, an adjustment by them is final and conclusive. Oftentimes a party may be willing to yield something for the sake of a settlement; and if he does so with a full knowledge of the circumstances, he cannot affirm the settlement, and afterwards maintain a suit for that which he voluntarily surrendered.

Hager v. Thomson, 66 U.S. (1 Black) 80, 93 (1861). In the 2013 settlement, Suiza "voluntarily surrendered" its takings claim. Id. It "yield[ed]" this claim for the sake of ending a long-running and expensive litigation process. Id. It also came out of the exchange with an agreement that it was entitled to approximately $123 million in regulatory accrual.

Suiza has not argued to us that the settlement is invalid or contrary to public policy. And there is no question that the

- 15 -

settlement covers the takings claim at issue here.[4] Suiza thus "surrender[ed its] right to have [its] day in court" to press for redress, Bandera, 344 F.3d at 52, and its takings claim was extinguished by its settlement with ORIL. See Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs., 493 F.3d 570, 577 (5th Cir. 2007) ("Because we conclude that, by entering into the Settlement Agreement, the landowners compromised their takings claim against the Levee Board, and thus, extinguished any takings claim they may have had, the landowners' only legal recourse is to enforce their rights under the Settlement Agreement and Consent Judgment.").

Suiza urges us to pull the curtain back on the settlement agreement and look more searchingly. If we do so, it assures us, the events and judicial opinions preceding the settlement agreement will reveal that a taking occurred. We decline Suiza's invitation.

To do so would undermine the settlement's finality, as well as the principle that "once a settlement is concluded, the

---

[4] Under Puerto Rico law, settlements are interpreted according to "the settling parties' intent as controlling." Vernet v. Serrano-Torres, 566 F.3d 254, 260 (1st Cir. 2009) (quoting Río Mar Assocs., LP v. UHS of P.R., Inc., 522 F.3d 159, 166 (1st Cir. 2008)). And from the settlement language here, it is clear that the parties intended the settlement to extinguish Suiza's claim pursuant to the takings clause. For illustration, contrast the language in the settlement between Suiza and ORIL with language in cases that we found insufficient to show plaintiff's intent to settle. Id. at 260-61.

merits of the antecedent claims will not thereafter be examined." See, e.g., United States v. Baus, 834 F.2d 1114, 1127 (1st Cir. 1987) (citing Bostick Foundry Co. v. Lindberg, 797 F.2d 280, 283 (6th Cir. 1986)).[5]

Finally, Suiza argues that even though settlements can extinguish other claims, takings claims are special. Specifically, Suiza claims that, because of the "self-executing character" of the Fifth Amendment, the right to just compensation arises immediately after a taking has occurred and cannot be disturbed or nullified in any way by the government's actions post-taking. See Knick v. Twp. of Scott, 139 S. Ct. 2162, 2171 (2019) (quoting First English Evangelical Lutheran Church of Glendale v. Cty. of L.A., 482 U.S. 304, 315 (1987)). But the cases Suiza relies on -- Knick, First English, and Jacobs v. United States, 290 U.S. 13 (1933) (which First English heavily relied on) -- explicate only that the government cannot unilaterally extinguish

---

[5] As the parties have, we assess the effect of the settlement on the parties' claims under federal law. However, even if we were to do so under Puerto Rico law, as a question of contract law, the result is the same: a valid and binding settlement (or "compromise") extinguishes the parties' claims. See, e.g., Caraballo Cordero v. Banco Financiero de P.R., 208 F. Supp. 2d 185, 189 (D.P.R. 2002) (explaining that under Puerto Rico law, "'[a] compromise is a contract by which each of the parties in interest, by giving, promising, or retaining something, avoids the provocation of a suit, or terminates one that has already been instituted'. . . . Once the existence of a compromise has been established, such a contract becomes res judicata." (quoting P.R. Laws Ann. § 4821)).

takings rights by, for example, repealing a challenged ordinance. See Knick, 139 S. Ct. at 2171 ("[W]here the government's activities have already worked a taking . . . no subsequent action by the government can relieve it of the duty to provide compensation.") (alteration in original) (emphasis added) (quoting First English, 482 U.S. at 321). But these cases say nothing about whether property owners, through agreement with the government, can extinguish their own takings claims by settling. In keeping with the principles discussed above, we conclude that, in the context presented by this case, they can.

After the settlement, any takings claim that Suiza might have had against the Commonwealth was replaced by a contractual claim.[6] Such a claim can properly be impaired and discharged in bankruptcy. See 11 U.S.C. § 365(a) (incorporated in PROMESA at § 301).[7]

**B.**

Next, we address Suiza's procedural argument, in which it maintains that its claim in the Title III proceeding must be considered a takings claim because its proof of claim identified

---

[6] Although the settlement agreement was approved and incorporated into a judgment by the district court, Suiza makes no claim to be a judgment creditor and has thus waived any argument to that effect. See Vázquez-Rivera v. Figueroa, 759 F.3d 44, 46-47 (1st Cir. 2014) (arguments not raised in opening brief on appeal are waived).

[7] Suiza expressly disclaims any argument that the Plan itself effectuated a taking.

- 18 -

it as such and FOMB never filed a formal objection to that claim. Suiza argues that the nature of its claim could only be modified in response to such an objection and through the proceedings that would follow. Suiza therefore claims that it was improper for the Title III court to modify the nature of its claim through the Plan confirmation process.

However, even if we were to accept Suiza's argument that the Title III court's adjudication of the nature of its claim through the Plan confirmation process was in error, any such error would be harmless. Accordingly, we reject Suiza's procedural challenge.

*i.*

11 U.S.C. § 502(a) explains that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects." 11 U.S.C. § 502(a) (incorporated in PROMESA at § 301). Once an objection to a claim is made, the party asserting the claim is entitled to "notice and a hearing" after which the court shall resolve the objection to the claim and determine its validity. 11 U.S.C. § 502(b).[8] "[T]he

_____

[8] Although the text of 11 U.S.C. § 502(b) only explicitly instructs that the court shall determine the amount of a claim following a hearing on the objection, the rule also governs objections to the nature of a claim. See In re Galindez, 514 B.R.

- 19 -

comprehensive chapter 11 statutory scheme [thus] defines the minimum due process for dealing with creditors, [and] requires compliance with the claim objection procedures . . . ." In re Dynamic Brokers, 293 B.R. 489, 492 (B.A.P. 9th Cir. 2003).

However, claim objections may be resolved outside of those specific procedures so long as the parties are afforded comparable rights as would have been available in the event of a formal claim objection and thus receive due process. See In re Garvida, 347 B.R. 697, 704 (B.A.P. 9th Cir. 2006) (affirming the resolution of a claim objection through plan confirmation, on harmless error grounds, where the parties "litigated the plan confirmation as if it was a claim objection proceeding"); see also In re Fili, 257 B.R. 370, 374 n.7 (B.A.P. 1st Cir. 2001) (explaining that the "perceptible tension between the plan confirmation process and the claims allowance/disallowance process . . . is relaxed entirely with an appreciation that . . . [n]otice

_____

79, 92 (Bankr. D.P.R. 2014) ("Debtors who wish to challenge the allowance, amount or characterization of a claim should object to [the] proof of claim . . .") (emphasis added); In re McLemore, 426 B.R. 728, 739 (Bankr. S.D. Ohio 2010) ("The claim allowance process set forth in §§ 501-506 controls whether an entity holds a claim which may be paid by the bankruptcy estate and, if so, the proper amount of any such claim and the nature of the claim, including whether it is entitled to priority or secured status.") (emphasis added); In re De Jesus, 268 B.R. 185, 197 n.19 (Bankr. D. Minn. 2001) (explaining that a debtor who "ha[s] a contention with any of [a] claim's characteristics" has an obligation to object and to resolve that objection "in the context of a formal court proceeding").

and procedural due process can be satisfied in several ways without violating any fundamental principles of bankruptcy law" and that "with adequate notice and opportunity for hearing, disputes that could be resolved through other procedural vehicles . . . may appropriately be determined at confirmation") (internal citations omitted); In re Woods, 406 B.R. 293, 297-98 (Bankr. N.D. Ohio 2009) ("This is not to say that, where a creditor files a proof of claim, a provision in a confirmed plan can never operate to reduce, eliminate or otherwise modify the creditor's claim. To the contrary, the plan confirmation process can often be the proper forum when addressing disputes concerning the treatment of a creditor's claim. However, the question in this regard is still one of due process.") (emphasis added) (internal citations omitted).

Accordingly, courts within this circuit have explained that a "plan which modif[ies] the rights of a secured creditor [is] the functional equivalent of a claims objection under § 502(a). It does not matter, substantively, which route the debtor takes so long as the creditor is informed of the itinerary and has an adequate opportunity to respond either by defending its proof of claim or by pressing an objection to the plan." In re Searcy, 333 B.R. 617, 623 (Bankr. D. Mass. 2005). In fact, even In re Dynamic Brokers, on which Suiza relies for the proposition that parties are "preclude[d from] using a chapter 11 plan

- 21 -

provision as the means to reduce a claim that is 'deemed allowed' without the creditor's consent," 293 B.R. at 492, explained that it was "not hold[ing] that a plan can never be used to object to a claim of a creditor who does not actually consent to such an objection," but instead that, if the objection is resolved through the plan confirmation process, "the essence of Rule 3007 must be complied with," id. at 497 (emphasis added) (discussing Fed. R. Bankr. P. 3007, which governs objections to claims).

Furthermore, Rule 9005 of Bankruptcy Procedure explains that errors that do not affect a party's substantial rights should be disregarded. Fed. R. Bankr. P. 9005 (incorporating Rule 61 of Civil Procedure); 48 U.S.C. § 2170 (explaining that the Federal Rules of Bankruptcy Procedure apply to PROMESA cases). Thus, even when there has been a procedural misstep, we will not reverse without a showing of prejudice. See In re Valente, 360 F.3d 256, 265 (1st Cir. 2004).

Therefore, even if we were to accept Suiza's contention that the Title III court erred by adjudicating FOMB's objection to Suiza's claim through the plan confirmation process, we may find any such error harmless and affirm the resolution, so long as the adjudication offered the parties comparable opportunities as would have been available in the event of a formal claim objection and did not offend their rights to due process.

*ii.*

In order to determine whether the Title III court's alleged procedural error denied Suiza due process, we examine what process would have been available to Suiza had FOMB filed a formal claim objection pursuant to Rule 3007 and then contrast that with the process that was provided here.

11 U.S.C. § 502(b) provides that notice and a hearing are required before the district court shall rule on an objection to a claim. Rule 3007 provides additional detail regarding the form and timing of notice that must be given, explaining that "a notice of objection that substantially conforms to the appropriate Official Form shall be filed and served [on the claimant] at least 30 days before any scheduled hearing on the objection or any deadline for the claimant to request a hearing." Fed. R. Bankr. P. 3007(a)(1). As for the hearing, Rule 3007's Advisory Committee Note states that "[t]he contested matter initiated by an objection to a claim is governed by Rule 9014." See also In re Levoy, 182 B.R. 827, 834 (B.A.P. 9th Cir. 1995) ("Most authorities agree that claim objections are contested matters. Thus, we hold that Fed. R. Bankr. P. 9014 applies to objections to claims.") (internal citations omitted).

Accordingly, it is clear that if, as Suiza contends was required, FOMB had formally filed an objection to Suiza's claim, Suiza would have been entitled to (1) notice and (2) the opportunity to litigate FOMB's objection as a contested matter

- 23 -

governed by Rule 9014.[9]  Because we conclude that Suiza received adequate notice of FOMB's objection to its claim, and because Suiza and FOMB did proceed to litigate that objection as a contested matter governed by Rule 9014, we find no harm or violation of due process in the Title III court's adjudication of FOMB's objection to Suiza's claim.[10]

<em>iii.</em>

First, as to notice, both the record and the parties' briefs are silent as to the form of notice that Suiza received. It is no stretch whatsoever, however, to conclude that Suiza was put on notice of the fact that FOMB objected to the characterization of Suiza's claim as a takings claim no later than when FOMB proposed a plan of adjustment that explicitly refused to treat Suiza's claim as a non-dischargeable takings claim and only proposed to pay Suiza 50% of what Suiza claimed to be owed (the

---

[9] Suiza does not specifically allege that either notice or its opportunity to be heard were deficient.  Instead, as discussed, Suiza simply alleges generally that the adjudication of its claim, absent a formal objection from FOMB, was in error.  Because any such error was harmless as long as the parties were afforded due process, and due process in the context of a formal claim objection requires both notice and an opportunity to be heard (in a proceeding governed by Rule 9014), we will assess whether either of those requirements were wanting here.

[10] Suiza does not claim that it was entitled to litigate whether it had a takings claim at an adversary proceeding, rather than a contested matter, and has thus waived any such argument.

Seventh Amended Plan of Adjustment).[11]  While this notice did not take the exact form described by Rule 3007, we are comfortable saying that it complied with "the essence" of that rule.  In re Dynamic Brokers, 293 B.R. at 497.  "An objection to a proof of claim . . . serves the purpose of putting the parties on notice that litigation is required to resolve the objection and to make a final determination on the allowance or disallowance of the claim."  In re Taylor, 132 F.3d 256, 260 (5th Cir. 1998). Here, this purpose was served by FOMB's proposed plan.  Suiza clearly received actual notice that the proposed Plan would discharge its claims: Suiza proceeded to object to the proposed

_____

[11] Although the Plan went through different iterations while Suiza was in the process of objecting to the Plan's treatment of its claims, as described below, the Seventh Amended Plan (and later iterations) were identical as to the relevant dispute here -- the Plans allowed Suiza to collect only 50% of its allowed claim. Suiza consistently argued this was not sufficient, as it had a non-dischargeable takings claim.

To the extent that Suiza contends that the Plan failed to provide notice that FOMB disputed that Suiza had a takings claim because, at the time of plan confirmation, FOMB was arguing that it had the authority to discharge all takings claims, we find this argument unavailing.  The Seventh Amended Plan of Adjustment specifically noted that Suiza's claim arose from "the Dairy Producer Settlement" -- a contract -- not from a taking, and placed Suiza and the other dairy producers in a separate class from the takings claimants.  Suiza's objection to that Plan then focused on the Plan's characterization of the nature of Suiza's claim and devoted significant argumentation to explaining why Suiza's claim is properly considered a takings claim.  Finally, FOMB's omnibus reply to the objections to the Plan explicitly stated that "Suiza Dairy's claim arises from a prepetition promise to pay contained in a settlement agreement, and thus is nothing more than an unsecured claim for breach of contract."

plan on the grounds that the Plan did not treat Suiza's claim as a non-dischargeable takings claim and proceeded to litigate that issue before the Title III court. Suiza thus cannot contend that it was unaware that FOMB objected to its claim as characterized in its proof of claim.

Furthermore, Suiza was made aware of this objection far in advance of any final determination on the treatment of its claim. The Seventh Amended Plan of Adjustment was filed on July 30, 2021, and Suiza objected to that plan on October 19, 2021. The parties then actively participated in proceedings addressing the issues raised in Suiza's objection, including at hearings held in November 2021, until the Plan of Adjustment (by that time the Eighth Amended Plan of Adjustment) was ultimately confirmed in January 2022.

Accordingly, we find that Suiza had sufficient notice of FOMB's objection to its claim and reject any argument that the Title III court's adjudication of the objection via plan confirmation deprived Suiza of due process because of inadequate notice.

*iv.*

Next, as to the hearing, Suiza received the same manner of hearing that it would have had if FOMB filed a formal objection to its proof of claim. FOMB's filing of a formal objection to Suiza's claim would have initiated a contested matter. In re

Thompson, 965 F.2d 1136, 1147 n.14 (1st Cir. 1992), as amended (May 4, 1992); Fed. R. Bankr. P. 3007 Advisory Committee Note. But when Suiza objected to the Plan, that objection initiated a contested matter. See In re Mansaray-Ruffin, 530 F.3d 230, 237 (3d Cir. 2008); Fed. R. Bankr. P. 3020(b)(1). Suiza proceeded to litigate its objection, thereby litigating the issue within the rules governing contested matters. Thus, to the extent Suiza argues the nature of its claim should have been resolved as a contested matter, this was indeed the treatment it received. Compare Fed. R. Bankr. P. 3007 Advisory Committee Note ("The contested matter initiated by an objection to a claim is governed by rule 9014.") with Fed. R. Bankr. P. 3020(b)(1) ("An objection to confirmation is governed by Rule 9014.").

Suiza does not point us to any specific aspects of the proceedings that fell short of the procedures or rules governing contested matters or governing the claim objection process. We are left, therefore, somewhat unsure of what Suiza thinks went wrong here.

As far as we can tell, Suiza's only plaint involves which party initiated the proceeding, and how the proceedings were initiated. According to Suiza, the Board should have objected to its proof of claim. Instead, Suiza initiated the contested matter by objecting to the Plan and disputing its characterization of its claim. But Suiza makes no convincing argument that the Title III

- 27 -

court's choice to determine whether Suiza had a takings claim after an objection by Suiza at confirmation, rather than through a contested matter prompted by an objection from the Board, materially affected it in any way.

Suiza advances no argument, for instance, that it did not have an appropriate opportunity to be heard. And in fact, Suiza had an extensive opportunity to be heard on its contentions.

For example, on July 30, 2021, the Board filed its Seventh Amended Plan. Suiza objected to the Seventh Amended Plan on October 19, 2021, arguing that its claim was in nature a takings claim, and the Plan must treat it as non-dischargeable. The Board replied in an omnibus reply eight days later, explaining that Suiza's claim was contractual, and was not a takings claim.

On November 3, 2021, the Board filed an Eighth Amended Plan. The Title III court then held eight days of confirmation hearings, spanning from November 8th to November 23rd. At the hearings, Suiza litigated whether or not it had a takings claim or a contractual claim, with the Title III court engaging Suiza multiple times specifically about its position on this issue. The Board also participated in these hearings, using some of its time at oral argument to dispute Suiza's argument that it had a takings claim.

After the confirmation hearings, the Title III court ordered Suiza to "provide additional information regarding its

takings claim" and "provide additional support for the basis of its constitutional takings claim," a request made "in relation with the Modified Eighth Amended Plan of Adjustment." Suiza did so on November 24, 2021, submitting a motion and attaching nine exhibits regarding its takings argument. On November 28, 2021, the Board submitted an additional Modified Eighth Amended Plan. Suiza submitted an objection to the modified Eighth Amended Plan on December 23, 2021, reiterating its argument that it held a takings claim. The final Plan was submitted on January 14, 2022, and confirmed on January 18, 2022. In the Title III court's order confirming the plan, it acknowledged (and overruled) Suiza's many oppositions to the confirmation of the Plan.

Suiza thus cannot demonstrate that it was deprived of an adequate opportunity to be heard regarding the nature of its claim. Indeed, in its December 2021 objection to the Plan, Suiza noted that its contentions, including that it had a takings claim, had "already been abundantly argued."

The only deficiency that Suiza arguably alleges (in a single sentence of its brief) is that it was denied an evidentiary hearing to present evidence of the nature of its claim. But Suiza does not explain what doors would have been opened through this evidentiary hearing, given the evidence already presented in Suiza's many filings (including exhibits) and at the hearings before the Title III court. In fact, each time that Suiza has

been provided with an opportunity to support its claim, the only evidence that it has put forth has been rulings from Suiza's underlying dispute with the Commonwealth in which the district court found, and this court affirmed, that Suiza had a likelihood of success on the merits of its various claims against the Commonwealth. Suiza has not suggested or indicated that it has any other relevant evidence. As we explained in Section II.A. above, these rulings (or any other evidence that Suiza could muster demonstrating that it suffered a taking pre-settlement) are immaterial to our conclusion that Suiza's settlement with the Commonwealth extinguished whatever claims Suiza had and converted them to contractual claims. See In re Gentile Fam. Indus., No. BAP CC-13-1563-KITAD, 2014 WL 4091001, at *6 (B.A.P. 9th Cir. Aug. 19, 2014) (finding harmless error and noting that given "the issue before the court was purely one of law," the court failed to see "how an adversary (or some other) proceeding would have produced a materially different result").

In light of the foregoing, even if it were procedurally improper, we would affirm the Title III court's decision to determine that Suiza did not have a takings claim at confirmation, given that Suiza has not articulated any prejudice that it faced from not litigating this issue upon an objection to its proof of claim from the Board. Suiza was afforded an opportunity equal to that which would have been available had the Board objected.

Indeed, we are confident that had the Board objected to Suiza's proof of claim, the outcome would have been the same. Accordingly, Suiza was not denied due process, and we affirm on this issue as well. See In re Hines, 193 F. App'x 391, 397 (6th Cir.), aff'd, 356 B.R. 786 (B.A.P. 6th Cir. 2006) ("In the absence of any demonstrable prejudice, there is no error resulting from the lack of [specific] proceeding."); In re Valente, 360 F.3d at 265 (no prejudice when complaint not filed under rules governing adversary proceeding when "proceedings provided [party] with more than adequate notice and an opportunity to be heard"); In re Moye, No. BNKR. 07-37770, 2010 WL 3259386, at *7 (S.D. Tex. Aug. 17, 2010), aff'd, 437 F. App'x 338 (5th Cir. 2011) ("Any violation of the rules in failing to treat the claim as an 'adversary proceeding' was both inconsequential and harmless in light of the bankruptcy court's full consideration of [the] evidence and arguments during the prior hearing.").[12]

## C.

Next, Suiza argues that the Plan unfairly discriminates by treating its claim differently than other takings claims. Specifically, Suiza argues that "Bankruptcy Code section

_____

[12] Suiza does not raise, and has therefore waived, any specific due process arguments premised on the absence of any particular procedures -- such as the opportunity to litigate one-on-one, see In re Garvida, 347 B.R. at 704 -- that may have been available in the event of a formal claim objection.

- 31 -

1129(b)(1) provides that a plan can be confirmed over the rejection of a class only if the plan does not discriminate unfairly with respect to each class that has not accepted the plan."

Suiza's unfair discrimination argument rests on the threshold contention that Classes 53 and 54 have identical takings claims, yet receive different treatment under the Plan. But for the reasons described in Section II.A., the Title III court properly concluded that Suiza did not have a takings claim. Thus, Suiza's unfair discrimination argument fails.

### D.

Suiza finally argues that the Plan provides an improper third-party release. Specifically, Suiza contends that the Plan "grant[ed] a release to the public at large as to the Dairy Producers regulatory accrual" established by the settlement agreement. Suiza, suggesting a test for determining whether a Plan with a third-party release "may be approved," urges that the test was not met here and therefore the Title III court erred in confirming the Plan. But the Plan does not contain a third-party release, and we thus reject Suiza's argument.

Recall that the 2013 settlement agreement enumerated the total regulatory accrual to which Suiza was entitled (approximately $123 million). It designated two sources for this money: first, as laid out in paragraph 14 of the settlement, the Commonwealth would contribute slightly more than 50% of the

regulatory accrual through direct payments to the regulatory accrual payout fund to be distributed to the milk producers (including Suiza). Second, increased milk prices (i.e., a milk surcharge) would provide the remaining funds. The Plan impairs and discharges the Commonwealth's obligation to make direct payments. Under the Plan, the Commonwealth will pay only 50% of the outstanding obligations that it owes Suiza under paragraph 14 of the settlement.

Suiza argues that the Plan therefore includes a third-party release by "granting a release to the public at large as to the Dairy Producers regulatory accrual" determined in the settlement. Specifically, Suiza contends that because the Plan (1) discharges the Commonwealth's obligation to pay in full its contribution to the regulatory accrual, and (2) prohibits Suiza from recouping the discharged portion of that obligation from any other source, the Plan releases the milk consuming public at large from its liability to cover the discharged portion of the regulatory accrual. This argument reflects a misunderstanding as to the nature of third-party releases.

A non-consensual third-party release is the "involuntary extinguishment of a non-debtor, third-party's claim against another non-debtor, third-party." Eamonn O'Hagan, On A "Related" Point: Rethinking Whether Bankruptcy Courts Can "Order" the Involuntary Release of Non-Debtor, Third-Party Claims, 23 Am.

Bankr. Inst. L. Rev. 531, 531 (2015); see also 18 A.L.R. Fed. 3d Art. 2 § 2 (Originally published in 2016) (describing third party releases as "releases [that] prevent nondebtors/third-parties (primarily creditors) from prosecuting claims against other nondebtors/third-parties (primarily individuals associated with the debtors)"). For example, sometimes a debtor corporation's reorganization plan may include language releasing that corporation's non-debtor directors from liability to the corporation's creditors (or to non-creditor third parties) for claims arising from their management of the corporation, because that liability could otherwise adversely impact the estate and threaten the distribution of assets as set out in the plan (if, say, the debtor-corporation would be required to indemnify its directors against such claims). See, e.g., In Re Purdue Pharma L.P., 69 F.4th 45, 77-83 (2d Cir. 2023) (approving reorganization plan's inclusion of non-consensual third-party releases for corporation's directors and officers), cert. granted, Harrington v. Purdue Pharma, L.P., No. 23-124, --- U.S. ----, --- S. Ct. ----, 2023 WL 5116031 (Aug. 10, 2023).

Here, there is no third-party release, as the Plan does not purport to discharge any third parties of liabilities they may owe Suiza. The Plan, in section 57.1(b), releases only the Commonwealth's liability for its direct payments to the regulatory accrual payout fund under paragraph 14 of the settlement. As is

apparent, the Commonwealth is not a non-debtor third-party. Although the Plan precludes Suiza from "recoup[ing]" the discharged portion of the regulatory accrual "from any other source," Suiza does not have any claim against any third party for that portion of the regulatory accrual; thus, the Plan did not discharge any such claims.

Suiza maintains that it has a claim against the "public at large" which the Plan, and the Title III court through its approval of the Plan, improperly released.[13] But this contention stretches the language of the 2013 settlement agreement beyond reason. In the 2013 settlement, the parties agreed that Suiza was entitled to approximately $123 million dollars in regulatory accrual, and that a portion of that accrual would be collected through a surcharge on milk which is ultimately paid by the public. But the settlement agreement contains no language suggesting in any way that the milk consuming public had or has a liability to Suiza for the Commonwealth's direct payment share of the fund. Instead, the relevant provisions merely indicate that the Commonwealth was obligated to apply a surcharge to the price of

---

[13] In its reply brief Suiza contends, for the first time, that an improper third-party discharge was also granted to Puerto Rico's government officials in their individual capacities. Because this argument is raised for the first time in Suiza's reply brief, and is only briefly mentioned without any effort at developed argumentation, we consider it waived. See United States v. Casey, 825 F.3d 1, 12 (1st Cir. 2016); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

milk, according to a schedule, and that the surcharge revenue would be passed on to Suiza. Nothing in the Plan impairs or modifies this provision of the settlement. See Plan § 57.1(c) ("[T]he Plan shall not affect the regulatory accrual charge being assessed on and paid from the cost of milk pursuant to the Dairy Producer Settlement."). Further, the fact that the Plan discharges a portion of the regulatory accrual that is to be paid by the Commonwealth did not transform Suiza's pre-existing claims against the Commonwealth into claims against the public at large. Suiza has not presented any argument for why it has a valid claim against the nebulous "public at large" for an undefined increase or extension of taxes on the sale of milk to cover a portion of the settlement agreement for which the Commonwealth, and not the public at large, is liable. The Plan therefore does not purport to impair any settlement-related debt owed to Suiza by the milk consuming public and no third-party release is at issue here.[14] We reject Suiza's contrary arguments.

## III. CONCLUSION

For the for foregoing reasons, we **affirm** the judgment below.

---

[14] Because we conclude there is no third-party release at issue, we need not confront Suiza's contentions related to why a third-party release was inappropriate.